DANIEL CHASE, and others, Appellants,

*vs.*

CITY OF PORTLAND.

Cumberland.   Opinion April 2, 1894.

*Way.   Damages.   Market Value.   New Trial.*
*Stat. 1887, c. 97.*

The petitioners represented that they were aggrieved by the refusal of the municipal officers of Portland to award them damages for an injury alleged to have been sustained by reason of the raising of Commercial street on its southerly side, and asked to have the damages determined by this court. The complaint was heard before a jury, who found that the petitioners sustained no damage. *Held;* In such a case, that the diminution in the market value

of the property injured is a correct measure of the damages sustained. The cost of the improvements and changes necessary to restore the premises to a proper condition in relation to the new grade of the street is admissible as evidence affecting the question of the benefit to the property, but not as a substantive cause of damage.

The petitioners were entitled to compensation for the net injury done them; to be made whole as far as money is a measure of compensation. This is the essential meaning of the term, "just compensation," whether reference is had to its use in the constitutional guaranty in favor of those whose property is taken for public uses, or as the recognized basis of all general rules, respecting damages. The special and peculiar benefits resulting to the petitioners from the change of grade, must therefore be offset against the damages sustained.

All such benefits as come from the situation of the premises with reference to the change of grade, such as having a dry and pleasant street in front of their lot and more convenient access to their store, are direct and special and must be set off against the damages, although other estates on the same street, may be benefited in like manner; but the general benefits arising from the improved facilities afforded by the street which affect equally all estates in the neighborhood, cannot be thus offset.

When there is no indication of prejudice or mistake on the part of the jury, and no just cause for disturbing the verdict, a new trial will not be granted.

ON MOTION AND EXCEPTIONS.

This was a case in which the petitioners sought to recover from the city of Portland damages for alleged injury occasioned them as owners of certain land, with buildings thereon, on Commercial street in Portland by the raising of the street by the city in front of petitioners' property during the months of June, July and August, 1891.

Proceedings were commenced by the petitioners, September 7, 1891, under the provisions of § 68 of c. 18 of Revised Statutes as amended by chapter 97 of statute of 1887. Application was seasonably made to the municipal officers of the city to view said street and assess the damages caused by the alleged raising of the street in June, July and August of the same year. View of the premises was had by the municipal officers, October 14, 1891, hearing had and petitioners were given leave to withdraw. Appeal was taken and entered in this court at the January term, 1892.

The case was tried at the October term, 1892, before a jury1 and the jury were allowed to view the premises. The jury returned a verdict that the defendant did raise said Commercia,

street in manner and form as the petitioners claimed, but that the petitioners suffered no damages thereby.

The case was then brought to the law court on a general motion for a new trial and upon exceptions.

The case is sufficiently stated in the opinion.

*C. F. Libby, Locke and Locke,* for plaintiffs.
*Seth L. Larrabee,* City Solicitor, for defendant.

SITTING: PETERS, C. J., EMERY, FOSTER, HASKELL, WHITEHOUSE, JJ.

WHITEHOUSE, J. The complainants represent that they are aggrieved by the refusal of the municipal officers of the city of Portland to award them damages for an injury alleged to have been sustained by reason of the raising of Commercial street on its southerly side adjoining their property, located at the head of Long Wharf, and ask to have the damages determined by this court.

The statute under which this complaint is preferred (Stat. 1887, c. 97) provides that, "when a way or street is raised or lowered by a surveyor or person authorized, to the injury of an owner of land adjoining, he may apply in writing to the municipal officers, and they shall view such way or street and assess the damages, if any have been occasioned thereby; and any person aggrieved by said assessment may have them determined on complaint to the supreme judicial court," &c. The complaint has been heard before a jury who found that the street was raised as alleged, but that the, "petitioners sustained no damage thereby." The case now comes to the law court on motion and exceptions.

The street in question appears to have been laid out across tide-water flats in 1853, and to have been constructed with a sea wall along the water front. The complainants' large wooden building (one hundred and fifty feet long and fifty feet wide) was constructed on piles over tide waters facing on Commercial street. At the time it was erected, the ground floor was fifteen

inches above the grade of the street. In 1861, a sidewalk was laid alongside the old platform in front of the store, but no other structural change appears to have been made on the southerly side of the street opposite this store until the change complained of in 1891. But the level of the northerly side of the street seems to have been raised at different points from time to time, and the railroad track in front of the complainants' premises was raised so that the planking between the rails became nearly two feet higher than in 1853. The southerly side of the street thus gradually sloped from the rails to the sidewalk. The result was that a large number of the buildings on that side of the street had been raised from sixteen inches to three feet; but it is in testimony from the complainants that they suffered no inconvenience and sustained no injury from the grade of the street prior to the change in question. In 1891, the street commissioner was duly instructed to raise the retaining wall on the southerly side opposite the building of the complainants, and to fill in the street to grade. This work was executed as directed, leaving the complainants' store seventeen inches below the new grade of the street. It is not in controversy that, in that relative position, the store was practically untenantable, and it is admitted that the sum of $1788.53 was necessarily expended by them in raising it to the level of the street and properly adjusting it to the new conditions. It is also admitted that whatever was done on the street at that time by the street com-- missioner was duly authorized by the city of Portland. (See *Mitchell* v. *Bridgewater*, 10 Cush. 411.)

I. The exceptions. It was contended in behalf of the complainants that the rentable value of the store was no greater after it was raised than before, and hence that the damage occasioned by the alleged injury to their premises would be fairly measured by the amount claimed to have been judiciously expended in securing it and adjusting it to the new grade. On the part of the city, it was contended that the complainants were benefited rather than injured by the change of grade; that by reason of the low level and depressed condition of the street at that point, before the change in 1891, the water frequently

stood to the depth of eight or ten inches in front of the com-
plainants' store, making the approach to it inconvenient and
difficult; and that the special benefits accruing to this property,
from the improvement in the street exceeded in value the amount
expended in raising the building.

The presiding judge instructed the jury, *inter alia*, as
follows:

"Now the damage to a piece of property in this class of cases
must be substantially this: how much did it reduce its market
value? . . . To answer that question intelligently you will con-
sider what condition the land was in. The word land, as used,
includes the permanent building upon it. What condition was
the property in, as a whole, and what condition was the street
in? Then if they went on and raised it in the manner described
. . did it increase or depreciate the value of that land as a whole,
the market value of it? . . . A great many elements go to make
up that question and to make up the answer to that question. . . .
If on the whole the increased value of the property by means of
raising of the street was equal to the expense thereby incurred,
which he was necessarily obliged to incur in order to raise the
building and put it in a proper condition, then he would not be
damaged within the meaning of the law. But if the expense
which he was thereby obliged to incur was more than the
increased value of the land, then this fact should be taken into
account. This is equivalent to saying he was injured. . . . . .
There is one benefit . . . which should not be taken into
account, that is, this side of Commercial street as a whole was
thereby improved, benefited for everybody that had occasion to
use it; where there was before a mud-hole on one side it
came up and presented a handsome level street throughout. . .
Such benefit as the petitioners may have derived in common
with all others living on the street, or having occasion to use it,
such benefit is not to be taken into account or deducted from
the injury to the land. . . . But what direct, special damage
was occasioned to this property you may take into account and
give them full compensation, if they have suffered.

"Now, in behalf of the city it is said that, although it cost

$1500 or $2000 and even more to raise this building and put it in a safe condition, still, the property being upon a level street instead of being placed in a mud-hole, is worth more than it was before, that it has increased the value of the property more than it has cost him, that he has been benefited rather than injured, even to the extent of $4000 or $5000. . . . . A witness says 'that if they didn't raise that building then of course it diminished its value.' You may as well say that a horse is not worth anything unless a man had a saddle to go with it, or a carriage and harness. . . . A lot without a house on it is not valueless because you can't use it until you do put a house on it.'"

It is contended by the learned counsel for the complainants that the decrease in the market value of the property injured cannot be a correct measure of the damages sustained, but that the true test to be applied, in a case of this kind, is the cost of restoring the premises to a proper condition in relation to the street, and of obviating the various elements of damage caused by raising the grade, provided such repairs be reasonably and judiciously made; and if he is too poor to repair the injury, or does not see fit to do so, his right to damages still subsists.

Instructions to the jury should be carefully adapted and restricted to the facts before them. It was in evidence here that this building had been elevated to conform to the change of grade, and the complainants had also been allowed to give the jury a full statement of all expenses incurred in making these necessary repairs. Upon these facts, the rule of damages stated and illustrated by the presiding justice was undoubtedly correct. It is the rule which has frequently been invoked in cases of this description, as well as in analagous cases in this and other states. Furthermore, the same rule has been applied in the assessment of damages, in cases of this kind, before the improvements have actually been made to conform to the change of grade and the cost of such improvements considered to be inadmissible as a substantive ground of damage. In *Plimpton* v. *Woburn*, 11 Gray, 415, the center of a town way was raised above the level of the petitioner's land adjoining, and evidence of what it would cost to. fill up the intervening space was excluded at the trial. On

exceptions the court say : "The question of the enhanced value to the land of the petitioner was in issue. The evidence offered ought to have been admitted. It is not because the land owner has a right to set up a claim for the expense of filling up the space between the traveled way and his land as a substantive cause of damage, but as affecting the question of the benefit to his property."

So also in *Barker* v. *Taunton*, 119 Mass. 392, damages were claimed for the act of the city in reducing the grade of two streets, and exception was taken because the petitioner was allowed to state what he had expended in improvements upon the premises since the change of grade. The exception was overruled, but the court say the objection would have been well taken, " if the cost of such improvements had been claimed as a substantive ground of damage."

Again, in *Buell* v. *Worcester*, 119 Mass. 372, the necessary changes to conform to the higher grade had not actually been made, but estimates were received in evidence of the expense that must necessarily be incurred in putting the property relatively in a proper condition. The jury were instructed that the damages awarded the petitioner should, "in no event exceed the amount of the diminution in the value of the property," resulting from the change of grade ; and in the opinion of the law court it is said : "The petitioner claimed damages occasioned by a change of grade in the street. He was entitled to recover the diminution in value occasioned to his property in the condition it was when the change was made from a low to a higher grade. Upon that question, and as one of the steps in determining it, the jury might consider what expense a prudent man would reasonably incur in putting the property, with reference to the new grade, in as good condition as it was before, being limited in their verdict to compensation for the diminished value of the property."

The same principle has been applied in analogous cases where the court is required to determine what is, "just compensation" for the taking of a portion of a lot of land, "as for public uses," and for the injury to the remainder of the land not taken. *Railroad Co.* v. *McComb*, 60 Maine, 290, is a leading and important

case on that subject. The jury were there instructed that the "damages included the value of the land taken and the direct injury to the land remaining by the taking and use of this portion. . . . If the real value of the land immediately before and after the location of the road could be ascertained, the difference between these two sums would be the damage. . . .

"The market value of the land at the times mentioned is perhaps the nearest approximation to its real value, and they may consider the diminution of its market value by the location of the road over it, excluding, however, any general depreciation of lands by reason of the extension of the road, which affected all lands in the village and neighborhood. It is the direct depreciation of this land in consequence of the location of the road over it, that is to constitute your measure of damages." In the elaborate opinion of the court by KENT, J., all these instructions were expressly approved.

Indeed, the objection to the use of the term "market value" as synonymous with "value" loses its force when the true significance of it is remembered. It is not limited to the price which it might realize at a forced sale by auction. "Market value" means the fair value of the property as between one who wants to purchase and one who wants to sell any article; not what could be obtained for it under peculiar circumstances, when a greater than its fair price could be obtained; not its speculative value; not value obtained from the necessities of another. It is what it would bring at a fair public sale when one party wanted to sell and the other to buy." *Lawrence* v. *Boston*, 119 Mass. 126 ; *Edmands* v. *Boston*, 108 Mass. 535 ; 3 Sutherland on Dam. 462 ; Cooley's Const. Lim. (6th Ed.) 697 and cases cited.

A doubt is also suggested by the learned counsel whether in the absence of express statutory provision therefor any benefits, though special and peculiar to the petitioners resulting from the change of grade, can be set off against the damages sustained ; and attention is called to the fact that in Massachusetts the allowance of such benefits is expressly authorized, while in Maine both the statutes and the judicial decisions are silent upon the subject.

But this doctrine seems to be so well founded in reason and justice, and to be so strongly fortified by the decisions in other states, and the uniform practice in this state, that it no longer presents a question for discussion.   It is a fundamental inquiry, an indispensable element in determining what is "just compensation" for the injury sustained.   A person suffering damage in the manner in question, is entitled to compensation for the net injury done him ; he is entitled to an exact equivalent for the injury ; he is to be made whole as far as money is a measure of compensation; no more and no less.   This is the essential meaning of the term, "just compensation," whether reference is had to its use in the constitutional guaranty in favor of those whose property is taken for public uses, or as the recognized basis of all general rules respecting damages.   In his treatment of the subject of eminent domain Mr. Cooley says in regard to compensation for property taken : "It seems clear that in these cases it is proper and just that the injuries suffered and the benefits received by the proprietor, or owner of the remaining portion of the land, should be taken into account in measuring the compensation.   This, indeed, is generally conceded ; but what injuries shall be allowed for, or what benefits estimated, is not always so apparent. . . . There must be excluded from consideration those benefits which the owner receives only in common with the community at large, . . while allowing those which directly affect the value of the remainder of the land.   And if an assessment on these principles makes the benefits equal to the damages, and awards the owner nothing, he is nevertheless considered as having received full compensation, and consequently as not being in position to complain." Cooley's Const. Lim. 698-702, and authorities cited.   See also 3 Sutherland Dam. 432.

It is interesting to note also that the statute in Massachusetts, expressly allowing such benefits to be considered, was simply an affirmation of the doctrine long before announced in the early case of *Com.* v. *Norfolk*, 5 Mass. 435.   See *Hilbourne* v. *County of Suffolk*, 120 Mass. 393 ; also *Allen* v. *Charlestown*, 109 Mass. 243 ; *Upham* v. *Worcester*, 113 Mass. 97.

There is a well-recognized, general distinction between the two kinds of benefit which may accrue to an estate from the alteration of a street. There may be a special and peculiar benefit resulting from its position on the street, as distinguished from other estates not bounding on the same street; and second, the general benefit arising from the facilities and advantages afforded by the street, which affect equally all estates in the neighborhood and which are shared in common with all such estates. This distinction was fully explained to the jury and they were correctly told that the special benefits might be set off against the damages, while the general benefits could not be.

But the learned counsel for the petitioners still insists that it was error to allow the jury to consider the improvement in the access to their store, made by filling up the, "mud-hole," as a special and peculiar benefit to their property.

It has been repeatedly held, however, that the, "advantages which an abutter may receive from his location on a highway laid out, altered or widened, are none the less peculiar and special to him because other estates on the same street receive special and peculiar benefits of a similar kind." *Allen* v. *Charlestown*, 109 Mass. 243; *Hilbourne* v. *Suffolk*, 120 Mass. 393. And *Donovan* v. *Springfield*, 125 Mass. 371, is a case precisely in point. It was a petition for damages occasioned to different lots by reason of the raising of the grade of the street; and it was held that, "all such benefits as come from the situation of the lots with reference to the grade of the street affecting their value, such as having a dryer and pleasanter street in front of the lots, and having more convenient access to the lots, are direct and special and must be set off against the damages, although other lots upon the same street might be benefited in like manner."

The rulings of the presiding justice upon this point were sufficiently favorable to the petitioners.

The remaining exceptions relate to instructions or requested instructions upon matters of minor importance which had in no way been the subject of controversy, and with respect to which it is not conceivable, from the whole tenor of the charge and the character of the evidence admitted, that there should have

been any misapprehension on the part of the jury. "To be enlarging and refining upon points, either of law or fact, about which there is no real dispute, is an evil. It distracts and burdens the memory of the jurors unnecessarily." *Stratton* v. *Staples*, 59 Maine, 99. The vital issue of fact presented by the evidence was clearly stated and aptly illustrated; and we find no reason to question the fullness or correctness of the instructions with which it was submitted to the jury.

II. The motion. The question whether the special and peculiar benefits accruing to the petitioners' property from the improvement in the street, were greater or less than the damage to it as a whole, was not intricate or difficult to be understood. Two tribunals have passed upon it with the same result. The jury were entirely disinterested. They had the advantage afforded by a view of the property and street in question and the improvements made in each. They had before them a plain, business proposition, and they could hardly fail to apprehend the true relation of the facts to the issue. Experienced and competent counsel were also there to see that no feature of the injury was overlooked and no element of damage forgotten. After a thorough examination of all the evidence reported and a careful study of the learned and exhaustive briefs of counsel, it is the opinion of the court that there is no indication of prejudice or mistake on the part of the jury, and no just cause for disturbing the verdict.

*Exceptions and motion overruled.*