## HEMPSTEAD v. SALT LAKE CITY.

No. 1803.    Decided May 8, 1907 (90 Pac. 397).

| 32 | 261 |
| p32 | 276 |
| 32 | 261 |
| 35 | 484 |

1. EMINENT DOMAIN—COMPENSATION—CHANGE IN STREET GRADE. Where improvements on property abutting on a street were made to conform to the original or surface grade of the street as the same was used for travel and recognized by the city, the city was liable for damages to the property   resulting from a change in the grade made for the purpose of reaching outlying property so as to make it more accessible and convenient for use, under the constitutional provision that private property shall not be damaged for public use without just compensation.[1]

2. SAME—INSTRUCTIONS.    In an action against a city for damages caused plaintiff's property by change in a street grade, an instruction on the question of damages not confined to special benefits accruing to plaintiff's property was properly refused.

---

[1] Kimball v. Salt Lake City, ante, p. 253, 90 Pac. 395.

3. SAME—SPECIAL BENEFITS.   In determining whether benefits to property resulting from a change in a street grade are special, the test is not whether the improvement affects one or more owners by creating special advantages to their property, but whether the benefits are in fact such as add anything to the convenience, accessibility, and use of the property as contradistinguished from benefits arising incidentally out of the improvement and enjoyed by the public generally.

4. APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE—CURE BY INSTRUCTIONS.   Where, in an action against a city for damages caused plaintiff's property by change in a street grade, the court instructed the jury as to the true measure of damages, and told them to disregard the rental value as a separate item, the admission of evidence of the rental value of the premises was harmless error.

5. SAME.  Where, in an action against a city for damages caused plaintiff's property by change in a street grade, plaintiff contended that his dwelling house was rendered unfit for a residence by reason of the raise of the street and sidewalk in front and on the side of the dwelling, the admission of evidence respecting the estimated value of the house and other improvements was not prejudicial to defendant; the court permitting such evidence only to show the actual diminution of the market value of the property, and instructing the jury that such diminution was the only test to be adopted by them.

6. SAME—EXAMINATION OF WITNESSES.   In an action against a city for damages caused plaintiff's property by change in a street grade, defendant was not prejudiced by the action of the court in permitting expert witnesses all of whom were qualified to testify in respect to the value to state the amount of the depreciation in the market value of the property, instead of stating the value before and after the street improvement was made.

7. SAME—TECHNICAL ERRORS.   Where there is no invasion by the court of the province of the jury and no misdirection as to the law, and both parties have been given full opportunity to develop their respective theories of the case before the jury, mere technical errors in respect to the form of questions or the admission of evidence where no substantial right has been affected or denied will not be sufficient to reverse the judgment.

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

Action by David B. Hempstead against Salt Lake City, a municipal corporation. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Ogden Hiles* and *H. J. Dininny* for appellant.

*D. B. Hempstead* and *E. A. Walton* for respondent.

## APPELLANT'S POINTS.

The rule is, that, whatever specially benefits the property in question should be taken into consideration in assessing damages to the property, even if such benefits are general as regards the public. (*Spokane Traction Co. v. Granath* [Wash.], 85 Pac. 261; *Lewis v. Seattle,* 5 Wash. 741; *Hilbourne v. Suffolk,* 120 Mass. 393; *Metropolitan, etc., Co. v. Stickney,* 150 Ill. 362; *Kirkendall v. Omaha,* 39 Neb. 1.)

## RESPONDENT'S POINTS.

The question was, "What, in your judgment, was the diminution in the value, the market value, of this property between the time when—just before the grade was changed, and when the change was completed." Evidence of experts such as these witnesses were, is universally admitted and it is held that the witness may state the diminution of value or damages directly. (2 Elliott on Evidence, 1097. 3 Wig., Ev., sec. 1942. *Eachus v. Railroad,* 103 Cal. 614; *Snow v. Railroad,* 65 Maine 230; *Sherman v. Railroad,* 30 Minn. 227; *Railroad v. Kirby,* 44 Ark. 103; *Railroad v. Foreman,* 24 W. Va. 662.)

And even where the courts have established the rule that the witness must state the value at the two different times and let the jury perform the subtraction, permitting it to be stated directly is not reversible eror. (*Elevator Co. v. Kansas City, etc., Co.,* 135 Mo. 353, 36 S. W. 1071. 2 Lewis' Eminent Domain [2 Ed.], and especially note 21.)

There can be no doubt that plaintiff's property was damaged and that his property, that is to say, his easements of light, air, egress, and ingress, were taken by reason of the fill in question, and that under the law obtaining in this jurisdiction and generally elsewhere, he is entitled to interest from the time of the damage and taking. The following authorities

support this position: 15 Cyc. 744; 2 Lewis' Eminent Domain, 499; *Parks v. Boston,* 15 Pick. 198; *Railroad v. Jones* [Utah], 80 Pac. 732; *Whitman v. Railroad,* 7 Allen 313; *Phillips v. Park Commissioners,* 119 Ill. 626, 645; *Railroad v. Burson,* 61 Pa. St. 381; *Kidder v. Inhabitants of Oxford,* 116 Mass. 165; *Diedrick v. Railway,* 47 Wis. 670.

A verdict for a specified sum with interest thereon from a previous date named is sufficient. *Id certum est quod certum reddi protest.* (*Guff v. Hutchinson,* 38 Ind. 341; *Hattenbach v. Haskins,* 12 Ia. 109; *Buchanan v. Townsend,* 80 Tex. 534.)

The matter discussed in the appellants' brief, under headings seven and eight, involves but one question that is whether damages can be recovered for a change of grade, which is the first change from the natural surface. Appellant insists that they cannot be recovered. There is a conflict of authority but as is said in *Leeper v. Denver,* 84 Pac. 849, cited by appellant, such doctrine obtains only in Colorado, Georgia and Mississippi. The following cases and many others support our contention: *Less v. City of Butte,* 72 Pac. 140; *Eachus v. Railway Co.,* 103 Cal. 614; *Chicago v. Taylor,* 125 U. S. 161; *Cambridge v. Middlesex,* 125 Mass. 529; *Smith v. St. Joseph,* 122 Mo. 643; *Coal v. City of St. Louis,* 132 Mo. 633; *City of Harvard v. Crouch,* 47 Neb. 133; *McCall v. Saratoga Springs,* 9 N. Y. Supp. 170; *Appeal of Hendricks,* 103 Penn. 358; *Fort Worth v. Howard* [Tex.], 22 S. W. 1059; *O'Brien v. Philadelphia,* 150 Pa. St. 589; *Bloomington v. Pollock,* 141 Ill. 346; *Hickman v. City of Kansas* [Mo.], 23 L. R. A. 658; *Searle v. Lead* [S. D.], 39 L. R. A. 345.

FRICK, J.

This action is similar to the one just decided, entitled *Kimball v. Salt Lake City,* 90 Pac. 395. The plaintiff, respondent in this court, filed a claim against the appellant city for consequential damages to his property caused by a change of grade on what is known as "Main" or "East Temple street,"

fronting his property. It appears from the evidence that the street in question is one of the principal streets of the city, and was laid out or dedicated to public use and used as such for more than fifty years, but up to the time of the injury complained of was used and traveled on approximately the original or surface grade. By this is not meant that the surface was not broken up and changed, but what is meant is that the changes from the surface grade were only such as were incidental in view of the location of the street and the topography of the country. It further appears that respondent's property was improved about thirty-two or thirty-three years prior to the making of the street improvements complained of by erecting a three-story, fifteen-roomed dwelling house constructed of part stone and part wood, and by planting trees and shrubbery, and maintaining a lawn thereon; that the property is situated in a desirable part of the city some little distance north of the Temple grounds, and was well adapted for residential purposes, close to the business center of the city, but was separated therefrom by the Temple Square on one side of the street and by college grounds upon the other; that the house was erected and the improvements were made in accordance with the natural or surface grade, and the access to the house and grounds was convenient from all sides and without any obstruction of either air or view, and was occupied as a dwelling place until after the completion of the change of street grade. It further appears that the street improvement consisted of a raise in the grade in the street and sidewalk in front of the property of substantially nine feet, and on the side thereof of about seven feet at the front, with a slope, making it about four feet in the rear, and thus access was cut off to the lot from the front and side, and with it the water was cut off which was used in irrigating the lawn, trees, and shrubbery, and thus making the property inconvenient and undesirable for use as a dwelling, and for that reason it was abandoned. It further appears that the dwelling and property generally were in good condition and repair just before the street improvement was made, but that since then the lawn, shrubbery, and most

of the trees have died out for want of the necessary water, and that respondent has been unable to obtain a tenant therefor at a reasonable rent, nor at any price for use as a dwelling. The lot affected fronted five rods on Main or East Temple street and extended back nine rods. Evidence was admitted on the part of respondent giving the value of the house as a dwelling, and also giving the value of the other improvements thereon separately. There was also evidence of the value of the property, including all improvements thereon, and of the real estate by excluding them. Expert or opinion evidence was also produced by both parties and admitted showing the market value of the property as a whole immediately before and after the street improvement, and the respondent was also permitted to show directly by some of the experts what the diminution of the market value of the property was by stating it in amount by designating it as damages to the property. The court, we think, correctly instructed the jury in respect to the measure of damages, and directed them to allow interest at the legal rate from the date of the filing of the claim by respondent against appellant. Upon substantially the foregoing evidence in respect to damages the case was submitted to the jury. A verdict was returned for respondent, and the court entered judgment thereon, from which the appellant prosecutes this appeal.

Appellant assigns numerous errors which need not be separately stated, but may be reduced to the following: (1) Error in not denying respondent the right to recover any damages as matter of law; (2) error in directing the jury to allow interest; (3) error in giving certain instructions by the court; (4) error in refusing certain instructions asked by appellant; and (5) error in overruling appellant's objections to certain questions propounded to respondent's witnesses, and in admitting certain evidence.

While the first assignment of error above noted is not clearly presented by appellant in its assignment of errors, and for that reason might be disregarded by us, we have concluded that inasmuch as both parties have thoroughly discussed the question both in oral argument and in their respective

briefs, and as the question is important to the city and prop-
erty owners alike, the question might as well be disposed of
now as at some later time. The question, however, we think,
is practically answered in the case of *Kimball v. City, supra,*
decided this term. While it is true that in that case the im-
provements on the property were shown to have been made af-
ter a certain so-called "paper grade" (of the street in ques-
tion) was established by the city, and that they substantially
conformed to that grade, and that it appears from the evi-
dence in this case that the improvements on respondent's prop-
erty were made a long time prior to the grade referred to as
the paper grade in the *Kimball Case,* and were made to con-
form to the original or surface grade of the street as the
same was used for travel—still we do not think that the differ-
ences above outlined alter the principle applicable to this and
the *Kimball Case* upon the legal right to recover consequen-
tial damages for injury to the property in making a public
improvement such as the one in question here. The cases cited
in the *Kimball Case,* as well as the constitutional provision
there referred to, are all applicable to this case. The city,
as appears from the evidence without conflict, had recognized
the street in question for many years prior to the time respon-
dent placed the improvements on his property. It had been
used by the public generally, and, so far as it affected respond-
ent's property and that of his neighbors, the surface grade
of the street answered every purpose of convenience and ac-
cess. The change of grade was not made to add anything to
the property in the immediate vicinity of respondent's re-
sidence, but was calculated to make, and did make, certain
property situated quite a distance therefrom more accessible
and convenient for occupancy and use, and to make vacant
property valuable for occupancy. Under such circumstances,
it is not easy to perceive why the constitutional provision
that private property shall not be damaged for public use does
not apply. The effect on respondent's property was precise-
ly the same as though there had been a change from one es-
tablished grade to another. It is a matter of universal know-
ledge that, if property is improved at all when a town or city

is platted, it must be in accordance with the natural or surface grades. That is the grade generally adopted and acted upon, and this, for all practical purposes, becomes the established grade of such streets upon which the abutting owners may rely in making improvements. Usually minor changes are made in this original grade when the town has developed into a city and modern improvements became necessary. These changes generally do not go beyond straightening the streets, are local in character, and may not do more than reduce the steep or abrupt inequalities, and usually do not inflict serious injury. When, therefore, a change is made for the purpose of reaching outlying property so as to make it more accessible and convenient for use, and in that way making it more valuable for both individual and taxable purposes, no valid reason is perceived why the constitutional provision should not apply as well before as after a change of established grade, in so far as improved property is affected thereby. We remark here, and repeat what we said in the *Kimball Case*, namely, that strong arguments can be presented in favor of the rule that consequential damages ought to be limited to those arising out of changes from one grade to another. This was the rule generally in force up to 1870, when the state of Illinois adopted a new Constitution, in which the provision was inserted that private property should not be damaged for public use. Since this 18 other states have adopted such a provision in their Constitutions, and the courts have, in obedience to this provision, departed from the old rule and have permitted a recovery for damages arising out of any change of grade whatever from the original or surface grade or from any other. This departure from the old rule, it seems to us, was not only justified; but, if the constitutional provision was to be given full force and effect, was required by it. The property of the individual is as much his own before as after an established grade; and, if damaged for public use or convenience in making a change from the original or surface grade, we can conceive of no good reason why the constitutional provision should apply in one instance and not in the other. We, therefore, feel constrained to hold that respon-

dent is not precluded from recovering in this case such damages as he may have sustained by reason of the improvement made by the appellant.

The contention that the court erred in giving instruction No. 9 wherein it directed the jury to allow legal interest is decided adversely to appellant's contention in the *Kimball Case,* and we adhere to the rule there announced. The error assigned relative to the court's instruction No. 8 presents the same question as the one discussed in the *Kimball Case,* and the reasons there given why the instruction was not prejudicial error are applicable here.

Error is also predicated upon the refusal of the court to give appellant's request No. 4, in respect to what elements should be considered and excluded by the jury in determining the diminution or enhancement of the value of the property affected by the street improvement. In the instruction offered, after stating that the whole street should be considered by the jury, appellant asked that the jury should also consider the following matters, in the following words: "If you find that the raising of the street has had or will have the effect of increasing the travel on said street in the parts adjacent to plaintiff's property, or of establishing or enabling improvements in the vicinity or neighborhood of plaintiff's property, you should consider and allow for such facts in fixing the depreciation or enhancement in value of plaintiff's property caused by such change in the elevation of said street." The court instructed the jury in effect that the amount respondent was entitled to recover was the difference between the market value of the property, if any, as it was immediately before and after the improvement, and in arriving at the latter value to exclude any general benefits derived from the improvement which were common to the general public. No exception was taken, nor is there any complaint made regarding this instruction. The appellant's contention is that the jury were not informed by the court what benefits, if any, derived by the respondent from the improvement should be considered by them in arriving at the amount to be allowed to him. From a careful examination of the original instructions in the re-

cord, we find that the court in effect instructed the jury that, if they found any special "or peculiar" benefits derived by the property in question from the street improvement, then such benefits were to be allowed by adding the amount of such benefits to the decreased value of the property resulting from the change of grade, as found by them, and, after adding these benefits to such value, the difference between this result and the market value of the property immediately before the change of grade, if any, would constitute the amount plaintiff should be allowed as damages. We have not been able to find any direct evidence in the record upon which the instruction offered by appellant could be based. There is some evidence that the property is not directly benefited by the street improvement at all; but there is no evidence that the things enumerated by appellant in the instruction actually existed. Apart from this, however, we think the instruction as offered was too sweeping. It treated of speculative rather than of substantial matters. The courts are not in strict harmony in respect to the precise elements that should be taken into consideration in determining the amount of damages or benefits that are to be allowed in cases of this kind. Where a certain parcel of land is all taken, there is usually no difficulty. But, where only a part of an entire piece is taken, or where none is actually taken, and the damages are purely consequential, there is some difficulty, and the diversity of opinion is the result. Not all of this diversity, however, arises out of the different views of the courts. Much of it is attributable to the variant statutory and constitutional provisions upon the subject. A very thorough, as well as a most intelligent, review of the different statutes and views of the courts and the rules on which such views are based is given in 2 Lewis on Eminent Domain (2d Ed.), secs. 465—476. The Supreme Court of Kansas, in the case of *Roberts v. Com'rs,* 21 Kan. *247—*252, we think fairly states what we conceive to be the better rule, as applied in many of the states, in the following language.

"Now, 'all conveniences and benefits' are not proper subjects for the jury to consider in awarding damages to a landowner who is seeking damages for supposed injuries to his land, claiming to have been caused by the location of a road over his premises; . . . that is, the benefits which may be taken into consideration for the purpose of reducing the damages to be awarded to the landowner are such as are direct and special as to him and his land, and not such as are received in common by the whole community, and with reference to cause and effect they are such as are direct, certain, and proximate, and not such as are indirect, contingent, or remote. It is true that increased value of the land is often taken into consideration in fixing the amount of the damages; but this is done only where such increased value arises from such direct, special, and proximate cause, . . . making some other valuable improvements on or near the land by means of which the owner will be enabled to enjoy his land with greater advantage. That is, the increased value must be founded upon something which affects the land itself directly and proximately. It must be founded upon something which increases the actual or usable value of the land, as well as the market or salable value thereof, and not such as increases merely the market or salable value alone. Increased value founded upon merely increased facilities for travel and transportation by the public in general is not the kind of increased value which may be taken into consideration in reducing the damages to be awarded to the landowner. That kind of increased value is too indirect and too remote from the original cause. . . . Besides, it is a kind of increased value which is common to the whole community in general, and to each individual thereof to a greater or less extent; and it has no relation to the use of the land as land, but it is merely an increased market value founded upon the extraneous circumstances of increased facilities for public travel and transportation."

The doctrine announced in the foregoing text is sustained by some of the courts of the highest respectabilty, as evidenced by the following cases. *City of Springfield v. Schmook,* 68 Mo. 394; *Palmer Co. v. Ferrill,* 17 Pick. (Mass.) 63-64; *Chase v. Portland,* 86 Me. 375-376, 29 Atl. 1104; *Sullivan v. North Hudson R. R. Co.,* 51 N. J. Law, 540, 18 Atl. 689; *Wilmington, etc., Railway Co. v. Smith,* 99 N. C. 131, 5 S. E. 237; *Beekman v. Jackson Co.,* 18 Or. 283, 22 Pac. 1074; *Mahaffey v. Railroad Co.,* 163 Pa. 158-162. 29 Atl. 881; *Railroad Co. v. McCloskey,* 110 Pa. 442, 1 Atl. 555. The instruction requested by appellant was therefore properly refused, since it was not confined to special benefits accruing to the particular property in question. It is quite true that benefits may be special which are in a sense likewise

general. In case the improvement made a large share or all
of the property abutting thereon more accessible and convenient for use, then such benefits would not for that reason cease
to be special simply because they were enjoyed by several or
a large number of property owners in common. The test is
not whether the improvement affects one or more owners by
creating special advantages to their property; but whether the
benefits are in fact such as add anything to the convenience,
accessibility, and use of the property as contradistinguished
from benefits arising incidentally out of the improvement
and enjoyed by the public generally. There is no evidence
in the record that shows that respondent's property derived
any special benefits such as would make the access thereto
or the use thereof more convenient in any way; but, on the
contrary, it is clear that the access thereto was greatly impaired if not entirely cut off, and the use thereof for dwelling
purposes, in the condition it was left by the improvement,
was, to say the least, made very undesirable.

We may add that any rule that is adopted with a view of
making full compensation for injuries sustained by private
property through public improvements must adhere strictly
to the fundamental principles of utility and equity. If these
principles are adhered to, then it necessarily follows (1) that
cases like the one at bar, where the improvements on the property were made and maintained for many years in accordance with the original surface grade of the street, must come
within the constitutional provision allowing compensation; and (2) that all general benefits must be excluded
in arriving at the amount constituting such compensation.
If such benefits are not excluded, then the property injured
is not placed on an equality with property on the
same street affected by the same public improvements but not injured thereby. If compensation for injuries
is to be reduced by general benefits, then property not injured
gains by whatever such benefits add to the property, while
injured property is taxed with them in the very attempt of
making compensation. To deduct these general benefits,
therefore, would result in not making full compensation at all,

because something would be withheld from the injured property which would be enjoyed by property not injured. Moreover, general benefits are speculative and remote. They may or may not be realized, and hence are too uncertain to be the subject of legal offset.

The other errors assigned relate to the form of certain questions, and to the admission of certain evidence. These assignments may be considered together. We think appellant was not prejudiced in permitting evidence of the rental value of the premises in question in view of the whole record and the instructions of the court. The court instructed the jury in respect to the true measure of damages, and told them to disregard the rental value as a separate item of damage. The same result also follows in respect to the admission of evidence respecting the estimated value of the house and other improvements. While trial courts should exercise great care in not departing from the general rule of proving the diminution of the market value of property, still no hard and fast rule can prevail in this class of cases. The case at bar is to some extent peculiar in its facts. It was contended by respondent that the dwelling house, a large one, was made entirely unavailable as a residence by reason of the raise of the street and sidewalk in front and on the side thereof. As an element showing the injury or damages, respondent offered, and was permitted, to show the value of the dwelling and other improvements on the property, but this the court, however, as the record discloses, permitted only as a means to the end to be attained, namely, the ascertainment of the actual diminution of the market value of the property, and the jury were told that such diminution was the real and only test to be adopted by them. It might have been better, in view of the expert evidence available, to have required the experts to state the market value of the property, and the jury were thereon immediately before and the same value, in view of the effects of the street improvement on the property immediately after such improvement was completed, and allow appellant to develop on cross-examination just how the ex-

32 Utah—18.

perts arrived at this result, and what elements, if any, they considered. In this case respondent showed all these elements as a basis for the opinion or judgment of his experts in respect to the value, and, in view of the whole record, we think appellant was not prejudiced by the ruling of the court. While it is true that, in view of all the evidence, we might not be inclined to allow respondent the amount allowed him by the jury, still the jury might have allowed him even more, and the verdict would still find support from the evidence. We feel constrained to suggest here that where the court, as in this case, permits evidence of the character and value of improvements as substantive evidence, it should direct the jury that such evidence is admitted only as a means to arrive at the market value of the property, and cannot be considered for any other purpose.

The alleged error in permitting some of the experts to testify to the amount of damages, or, in other words, to the amount of the depreciation in the market value of the property, could not have been prejudicial to the appellant in this case. No special benefits were shown. The whole question, therefore, resolved itself into establishing the difference of the market value of the property caused by the change of grade. Whether this was stated by the experts by giving the value before and after the street improvement was made, or by stating the amount of the difference, it seems to us could not prejudice any one, since the witnesses were all qualified to testify in respect to the value of the property. The matters last above noticed will be found discussed and the views above expressed sustained in the following cases: *Chase v. Portland,* 86 Me. 367, 29 Atl. 1104; *Snow v. Boston & M. Ry. Co.,* 65 Me. 230; *Sherman v. St. Paul, M. & M. Ry. Co.,* 30 Minn. 227, 15 N. W. 239; *Texas & St. L. Ry. Co. v. Kirby,* 44 Ark. 103; *Union El. Co. v. K. C. Ry. Co.,* 135 Mo. 353, 36 S. W. 1071; *Eachus v. Los Angeles, etc., Ry. Co.,* 103 Cal. 614, 37 Pac. 750, 42 Am. St. Rep. 149.

From an examination of the cases it would seem that some courts have reversed cases for errors such as appellant complains of in this case. It is not made clear, however, from

those cases what the state of the whole record was. If the matters presented in this case were to be considered as abstract propositions, and apart from other parts of the record, upon the same subject, we, too, might have arrived at a different result. In this case, however, the court's instructions stated the law applicable to the case, and directed the jury correctly in respect to the application of the law to the evidence. Where there is no invasion by the court of the province of the jury, and no misdirection as to the law, and both parties have been given full opportunity to develop their respective theories of the case before the jury, mere technical errors in respect to the form of questions, or in the admission of evidence, where no substantial right has been affected or denied, will not be sufficient to reverse a judgment. Cases in respect to such matters must be viewed concretely, and when viewed in that light, as is made clear from the authorities last above cited, there is no prejudicial error presented by this record.

The judgment therefore should be, and accordingly is, affirmed, with costs.

McCARTY, C. J., and STRAUP, J., concur.