2007 UT App 324

**STATE of Utah, Plaintiff and Appellee,**

v.

**Christopher Simon CASTILLO, Defendant and Appellant.**

No. 20060811–CA.

Court of Appeals of Utah.

Oct. 12, 2007.

Randall W. Richards, Ogden, for Appellant.

Mark L. Shurtleff, atty. gen., and Ryan D. Tenney, asst. atty. gen., Salt Lake City, for Appellee.

Before BENCH, P.J., DAVIS and THORNE, JJ.

## OPINION

BENCH, Presiding Judge:

¶ 1 Defendant Christopher Simon Castillo appeals from a conditional guilty plea on one count of aggravated assault, a third degree felony, and one count of possession of a dangerous weapon by a restricted person, a second degree felony. Defendant contends that the trial court erred by admitting a handgun found at the scene of the crime months after his arrest. Defendant's claim fails because the probative value of the pistol

was not substantially outweighed by the danger of unfair prejudice. We therefore affirm.

## BACKGROUND

¶2 On November 11, 2005, Officer Ken Hammond (the Officer) responded to a call claiming that a man wearing black was seen pointing a silver or chrome handgun at another man near a bakery in Ogden, Utah. Before the Officer arrived, a bakery employee (the Victim) chased Defendant through the bakery's parking lot. According to the Victim, Defendant pointed a "chrome pistol" at him from a distance of four feet and told him "to back off," which he did. When the Officer arrived at the scene, Defendant, who matched the description of the suspect, immediately ran from the Officer. The Officer followed on foot. According to the Officer, Defendant pulled out a "shiny, chrome handled, fully framed, full size semiautomatic handgun" and pointed it at the Officer from approximately fifteen yards away. The Officer yelled at Defendant, warning him to put down the weapon, but Defendant continued to run, pointing the gun back at the Officer as he fled.

¶3 The Officer followed Defendant around the bakery, but slowed his pursuit when Defendant entered an area that, in the Officer's opinion, contained numerous hiding places. When the Officer slowed, he lost sight of Defendant for approximately fifteen seconds before hearing on the police radio that Defendant was being held at gunpoint by other officers at the scene. At the time Defendant was arrested, the police conducted a search of the area, but did not find the handgun.

¶4 Nearly six months later, another bakery employee found a silver semiautomatic handgun in some bushes near the bakery, in the vicinity where Defendant had been trying to avoid capture. The handgun "appeared as if it had been outside" for a prolonged period of time because it was "very muddy and fouled with dirt." The handgun was not registered to Defendant, was not reported stolen, and authorities failed to recover any fingerprints therefrom. However, the handgun matched the witnesses' descriptions of the gun wielded by Defendant.

¶5 Defendant filed a motion to suppress the recently recovered weapon, and the trial court held a hearing to determine the admissibility of the handgun. Defendant argued that admitting the handgun would violate rule 403 of the Utah Rules of Evidence. After the trial court denied the motion, Defendant entered a conditional guilty plea, reserving the right to appeal the trial court's decision concerning the admissibility of the handgun. Defendant now appeals.

## ISSUE AND STANDARD OF REVIEW

¶6 Defendant claims that rule 403 of the Utah Rules of Evidence precludes the handgun's admission into evidence. "We review a trial court's decision to admit or exclude evidence under [r]ule 403 ... [using] an abuse of discretion standard." *Diversified Holdings, L.C. v. Turner*, 2002 UT 129, ¶6, 63 P.3d 686. We therefore "will not overturn a lower court's determination of admissibility unless it is 'beyond the limits of reasonability.'" *Id.* (quoting *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992)).

## ANALYSIS

¶7 Defendant claims that the trial court should have excluded the handgun under rule 403 of the Utah Rules of Evidence. Specifically, Defendant argues that the connection between himself and the handgun is so attenuated that its admission into evidence presents a danger of unfair prejudice. Defendant's argument that this attenuation presents the danger of unfair prejudice blurs the line between prejudicial and unfairly prejudicial evidence. Under rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Utah R. Evid. 403. "Unfair prejudice within [this] context means an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Maurer*, 770 P.2d 981, 984 (Utah 1989) (quotations and citation omitted).

¶8 The Utah Supreme Court has cited other courts' descriptions as adequately describing the concept of unfair prejudice. For example, evidence may be unfairly prejudi-

cial "if it 'appeals to the jury's sympathies, arouses a sense of horror, provokes the instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'" *Id.* (quoting *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir.1980)). Similarly, "*[u]nfair* prejudice results from ... that aspect of the evidence which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude towards the defendant wholly apart from its judgment as to his guilt or innocence of the" specifically charged crime. *Id.* (second alteration in original) (quotations and citation omitted).

¶ 9 The supreme court has also enumerated specific examples as representative of the types of evidence that present the danger of unfair prejudice. In *State v. Maurer*, 770 P.2d 981 (Utah 1989), the supreme court reversed a murder conviction based on the trial court's improper admission of a letter written by the defendant to the victim's family. While containing relevant information about the defendant's state of mind, the letter was replete with obscene and degrading language aimed at the deceased victim. *See id.* at 982. The court held that such a letter could have improperly provoked the jury's instinct to punish. The court then went on to acknowledge several additional examples from other courts. *See id.* at 984–86. These examples included an audio recording on which victims could be heard crying out in pain, *see United States v. Layton*, 767 F.2d 549, 556 (9th Cir.1985); an audio recording on which the defendant could be heard using obscenities and racial slurs, *see United States v. Barletta*, 652 F.2d 218, 220 (1st Cir.1981); a recorded telephone call to police from a rape victim who was emotionally overcome and incoherent, *see State v. Pendergrass*, 179 Mont. 106, 586 P.2d 691, 694 (1978); and a threatening phone call from a defendant to a witness, *see State v. Marlar*, 94 Idaho 803, 498 P.2d 1276, 1282–83 (1972). The Utah

Supreme Court has also included graphic photographs of victims of violent crimes as evidence that may present the danger of unfair prejudice. *See State v. Garcia*, 663 P.2d 60, 64 (Utah 1983).

¶ 10 Here, the trial court ruled that the challenged evidence, a dirt-encrusted handgun, would not cause a jury "to get caught up in the emotions of the charged offenses." We agree. The prosecution's introduction of a handgun alleged to have been used in the charged crime does not unfairly prejudice Defendant, especially when compared to the types of evidence the Utah Supreme Court has stated are likely to "'arouse[a] sense of horror'" in the jury, "'provoke[the jurors' collective] instinct to punish,'" or "'cause a jury to base its decision on something other than the established propositions in the case.'" *Maurer*, 770 P.2d at 984 (quoting *Carter*, 617 F.2d at 972–73).

¶ 11 Defendant's argument that the delay in the recovery of the handgun makes it inadmissible confuses the probative value of the handgun and the extent to which it may be unfairly prejudicial. It is true that "'the remoteness of ... evidence *may* reduce its probative value.'" *State v. Martin*, 2002 UT 34, ¶ 34, 44 P.3d 805 (emphasis added) (quoting *State v. Jaeger*, 1999 UT 1, ¶ 16, 973 P.2d 404). But, even if we were to accept Defendant's argument that the handgun provides little probative value, we have already stated that the danger of unfair prejudice associated with the handgun is extremely low. The trial court reasonably determined that the probative value of the handgun, which was found at the scene of the crime and matched eyewitness descriptions of the weapon Defendant used, was not substantially outweighed by the almost nonexistent danger of unfair prejudice.[1]

## CONCLUSION

¶ 12 The trial court properly balanced the probative value of the handgun against the danger of unfair prejudice to Defendant.

---

1. Defendant invites us to accept his conclusions that a jury could consider the handgun in the same way it could improperly consider prior conviction evidence. Defendant, however, provides no legal analysis explaining why the hand-gun should be treated similarly to prior conviction evidence or to the other types of emotionally inflammatory evidence described by the Utah Supreme Court as presenting the danger of unfair prejudice.

The danger of unfair prejudice presented by the handgun was very low. Even if we agreed with Defendant's arguments that the probative value of the handgun was lowered by the remoteness of its recovery, a reversal would not result because rule 403 requires that the danger of unfair prejudice substantially outweigh the probative value of the proffered evidence. The trial court's decision that such is not the case here was reasonable and therefore not an abuse of discretion.

¶ 13 Defendant's conviction and sentence are affirmed.

¶ 14 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE JR., Judges.