2008 UT App 247

**STATE of Utah, Plaintiff and Appellee,**

v.

**Dawn Marie DOWNS, Defendant and Appellant.**

No. 20070526–CA.

Court of Appeals of Utah.

June 26, 2008.

**18**

Linda M. Jones and Patrick S. Tan, Salt Lake City, for Appellant.

Mark L. Shurtleff and Joanne C. Slotnik, Salt Lake City, for Appellee.

Before Judges THORNE, BILLINGS, and McHUGH.

## OPINION

McHUGH, Judge:

¶ 1 Defendant Dawn Marie Downs appeals her conviction for unlawful possession of a controlled substance within a correctional facility, a second degree felony, *see* Utah Code Ann. § 58–37–8(2)(e) (2007).[1] Downs argues that the trial court erred by admitting evidence in violation of rule 403 of the Utah Rules of Evidence. We affirm.

## BACKGROUND

¶ 2 On November 30, 2005, Downs was present during a police search of the residence she shared with her boyfriend. The search warrant mentioned the boyfriend by name, as well as "all persons present at the home." Police found methamphetamine; drug distribution packaging materials, including plastic baggies; other materials commonly used to store and conceal drugs; and more than $4000 in cash. When conducting the search, the officers—in accordance with their standard procedure—detained those present in the home, frisked them for weapons, and ran warrants checks on each of them. The officers discovered two outstanding misdemeanor warrants on Downs and, thus, arrested her and transported her to jail. She twice responded negatively to different officers who asked if she was carrying anything illegal on her person. However, a subsequent search at the jail revealed a small, pink, plastic baggie of methamphetamine in the coin pocket in the front of her jeans. The parties do not contest these facts.

¶ 3 At trial, Downs claimed that her possession was neither knowing nor intentional because she had borrowed the pants from a friend who had purchased them from a secondhand clothing store earlier that day.

---

1. Downs was charged under the 2005 version of the statute, which has since been amended. *See* Utah Code Ann. § 58–37–8 amend. notes (2007). Because these amendments do not substantively affect this case, we cite to the current version of the statute for convenience.

Downs asserted that she was unaware that the drugs were in the pocket. To contradict this assertion, the State submitted evidence related to the search of Downs's home, the drugs found there, and the prior drug trafficking surveillance that police had conducted on the home. Although defense counsel objected on the grounds that such evidence was irrelevant and unduly prejudicial, the trial court admitted it.

¶ 4 The jury convicted Downs of possession of a controlled substance within a correctional facility. *See id.* § 58–37–8(2)(a)(i) ("It is unlawful ... for any person knowingly and intentionally to possess or use a controlled substance ...."); *id.* § 58–37–8(2)(e) ("Any person convicted of violating Subsection (2)(a)(i) while inside the exterior boundaries of property occupied by any correctional facility ... shall be sentenced to a penalty one degree greater than provided in Subsection (2)(b)...."). Downs seeks reversal of the jury verdict and a new trial, claiming that the court erred in admitting the challenged evidence.

## ISSUE AND STANDARD OF REVIEW

¶ 5 On appeal, Downs argues that the "evidence presented at trial relating to the search warrant and drug activity at the house was unduly prejudicial, confusing, and in violation of Rule 403."[2] Under the facts of this case, we disagree.

¶ 6 " 'We review a trial court's decision to admit or exclude evidence under [r]ule 403 ... [using] an abuse of discretion standard.' We therefore 'will not overturn a lower court's determination of admissibility unless it is beyond the limits of reasonability.' " *State v. Castillo,* 2007 UT App 324, ¶ 6,

170 P.3d 1147 (alterations in original) (quoting *Diversified Holdings, LC v. Turner,* 2002 UT 129, ¶ 6, 63 P.3d 686); *see also State v. Tarrats,* 2005 UT 50, ¶ 39, 122 P.3d 581 ("We have held that [w]e will not overturn the trial court's ruling [on the application of Rule 403] unless the abuse of discretion is so severe that it results in a likelihood of injustice." (alterations in original) (internal quotation marks omitted)); *State v. 633 E. 640 N.,* 942 P.2d 925, 929 (Utah 1997) ("Trial courts have wide latitude in making determinations of relevance, probativeness, and prejudice under rules 401 and 403.").

## ANALYSIS

¶ 7 Rule 403 states: "Although relevant,[3] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Utah R. Evid. 403. In discussing the balancing of probativeness and prejudice under rule 403, the Utah Supreme Court has stated that

> [t]he critical question is whether certain testimony is so prejudicial that the jury will be unable to fairly weigh the evidence. Our case law suggests that we have confidence in our juries to appropriately weigh evidence that may be adverse to a defendant.... Absent a *substantial, not potential or minor, prejudicial effect,* the ... evidence is admissible for the jury's consideration in reviewing all other facts.

*State v. Guzman,* 2006 UT 12, ¶ 27, 133 P.3d 363 (emphasis added). Moreover, relevant evidence is presumed to be admissible if it does not " 'ha[ve] an unusual propensity to unfairly prejudice, inflame, or mislead the jury.' "[4] *State v. Jaeger,* 1999 UT 1, ¶ 18, 973

2. Downs also argues on appeal that this evidence was inadmissible under rule 404(b) because it "failed to meet the requirements of Rule 403." However, we do not review Downs's rule 404(b) argument because she failed to preserve it in the trial court and does not assert that either the plain error or exceptional circumstances exception applies. *See State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346.

3. A determination of relevancy is generally the first step in a rule 403 analysis. *See, e.g., State v. Gulbransen,* 2005 UT 7, ¶ 34, 106 P.3d 734. However, Downs does not assert on appeal that

the trial court violated rules 401 and 402. *See generally* Utah R. Evid. 401 (defining relevant evidence); *id.* R. 402 (stating that relevant evidence generally is admissible).

4. Downs argues that an analysis using the factors set forth in *State v. Shickles,* 760 P.2d 291 (Utah 1988), is required. Although we agree that some of the *Shickles* factors may be relevant to an analysis of whether evidence is substantially more unfairly prejudicial than probative, these factors were developed in the context of rule 404(b) and specifically relate to the admissibility of prior bad acts or crimes. *See id.* at 295–96

P.2d 404 (quoting *State v. Dunn,* 850 P.2d 1201, 1221–22 (Utah 1993)). And, "even if the evidence has the potential for prejudicing a defendant, it will be admitted if it has unusual probative value." *State v. Kell,* 2002 UT 106, ¶ 31, 61 P.3d 1019 (citing *State v. Vargas,* 2001 UT 5, ¶ 51, 20 P.3d 271). On the other hand, even "minimally probative evidence need not . . . be excluded" unless it " 'is *substantially* outweighed by the danger of *unfair* prejudice.' " *State v. Johnson,* 784 P.2d 1135, 1141 (Utah 1989) (second emphasis added) (quoting Utah R. Evid. 403).

## I. The Evidence Was Highly Probative

■ ¶ 8 To determine whether the trial court exceeded its discretion in admitting the evidence under rule 403, we must first review its probative value. "The probative value of evidence is judged by the strength of the evidence and its ability to make the existence of a consequential fact either more or less probable and the proponent's need for the evidence." *Id.* at 1140 (footnote omitted) (internal quotation marks omitted); *see also State v. Gomez,* 2002 UT 120, ¶ 35, 63 P.3d 72 (discussing factors for determining probative value in the context of a 608(b) and 403 analysis).

¶ 9 By denying any knowledge of the methamphetamine found in her pocket, Downs made the testimony regarding the

search of her residence, the drugs found there, and the circumstances surrounding her arrest highly probative.[5] *Cf. State v. Gulbransen,* 2005 UT 7, ¶ 41, 106 P.3d 734 ("The[photographs of the victim's anus] are useful in depicting evidence of crucial elements of the State's charged offenses [of child sodomy]."). This evidence helps to establish that Downs had ready access to, was knowledgeable about, and had the requisite intent to possess the controlled substance found on her at the jail. Additionally, the State's need to present evidence of the prior search was substantial because there was no other way to counter Downs's contention that she was unaware that there were drugs in the pocket of her borrowed jeans. *See Johnson,* 784 P.2d at 1140; *see also United States v. Rodriguez,* 192 F.3d 946, 950 (10th Cir. 1999) (concluding that the indirect evidence's "importance" was "magnified" where there was "no direct evidence of [the defendant's] knowledge").

¶ 10 Furthermore, the circumstances related to the search of Downs's home and the to discovery of drugs there share factual similarities with the charges related to the drugs found on Downs at the jail. For example, both involved methamphetamine substances that could have come from the same source,[6] and both were packaged in pink, plastic bag-

(considering "the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes," etc. (internal quotation marks omitted)); *see also State v. Nelson–Waggoner,* 2000 UT 59, ¶¶ 20, 28, 6 P.3d 1120 (requiring the trial court, *in its rule 404(b) analysis,* to determine whether the *"bad acts"* or *"other crimes evidence"* complies with rule 403 using the *Shickles* factors (emphasis added)); *State v. Decorso,* 1999 UT 57, ¶¶ 19–20, 23, 29, 993 P.2d 837 (same).

5. We find a case from the Tenth Circuit to be informative. *See generally State v. Gomez,* 2002 UT 120, ¶ 33 n. 5, 63 P.3d 72 (looking to federal cases "applying a federal evidentiary rule" when reviewing "an analogous Utah evidentiary rule" and noting that Utah's rule 403 is identical to the federal rule). In *United States v. Rodriguez,* 192 F.3d 946 (10th Cir.1999), the federal court disagreed with the district court's determination that the probative value of the government's expert testimony as to the value of the drugs found in the defendant's possession was " 'relatively low.' " *Id.* at 950. The Tenth Circuit stated:

[The defendant]'s knowledge of the existence of the drugs in the truck apparently will be the critical issue in dispute in the trial. It appears that there is no direct evidence of his knowledge, and thus the importance of any indirect evidence of his state of knowledge becomes magnified. The fact that conflicting inferences may be drawn from the value of the drugs is something left up to the parties to argue at trial, but it does not detract from the probative value of the evidence itself.

*Id.* Downs's knowledge of the drugs in her pocket was likewise "the critical issue in dispute in the trial." *See id.* As did the government in *Rodriguez,* the State here relied on indirect evidence to show the defendant's state of knowledge. *See id.*

6. Although no chemical analysis was performed, a crime lab employee testified that the two different methamphetamine substances "look[ed] similar" and answered "absolutely" when asked whether the substances "could . . . have come from the same source."

gies.[7] Finally, she sought to suppress evidence of events that occurred only hours before her arrest for possession.[8] Although such evidence will not always be appropriate, under the unique facts present here, we agree with the trial court that the evidence was probative of the State's case. Indeed, Downs's defense on the basis of mistake and lack of knowledge made the evidence both probative and necessary. *See Johnson*, 784 P.2d at 1140.

## II. The Evidence's Probative Value Is Not Substantially Outweighed by the Danger of Unfair Prejudice

¶ 11 The next step in our analysis of whether the trial court exceeded its discretion is to review whether the evidence is unfairly prejudicial, despite its probative value. *See, e.g., Kell*, 2002 UT 106, ¶ 35, 61 P.3d 1019 ("[W]hile [the statements] may have been prejudicial, they were not inherently prejudicial; they were also highly probative as to his racist beliefs, a fact that went to the motive for the killing and demonstrated his clear premeditated intent. Thus, they were permissible under rule 403."). The type of prejudicial evidence that "calls for exclusion" is specifically defined as evidence that creates "an undue tendency to suggest decision on an improper basis, commonly but not necessarily an emotional one, such as bias, sympathy, hatred, contempt, retribution or horror." *State v. Maurer*, 770 P.2d 981, 984 (Utah 1989) (internal quotation marks omitted); *see State v. Lindgren*, 910 P.2d 1268, 1272 (Utah Ct.App.1996) ("Under a Rule 403 analysis, the trial court may find evidence to be unfairly prejudicial, and therefore inadmissible, 'if it appeals to the jury's sympathies, arouses a sense of horror, provokes the instinct to punish, or otherwise may cause the jury to base its decision on something other than the established propositions of the case.'" (quoting *Carter v. Hewitt*, 617 F.2d 961, 972–73 (3d Cir.1980))); *see also Rodriguez*, 192 F.3d at 951 (explaining that "testimony which is simply unfavorable to a party" is not unfairly prejudicial (internal quotation marks omitted)).

¶ 12 The trial court determined that the evidence was not unfairly prejudicial, stating:

[T]his [evidence] gives context to the jury .... [and] is not confusing to them....

... It is not more prejudicial to Ms. Downs that she possessed [the drugs] somewhere else. The same evidence of her possession is going to be coming in, and so the fact that it comes in in the context that it was at a search warrant at a residence where she was, and apparently there's some evidence that she resides there, goes directly to her knowledge and lack of mistake. So that goes specifically to the case-the State's ability to enter this in its case in chief.

. . . .

... [T]he prejudice just simply is not extensive at all. The only prejudice that goes to Ms. Downs is that she possessed an ... unlawful controlled substance.

¶ 13 We hold that the trial court did not exceed its broad discretion in admitting the evidence for three reasons. First, the evidence at issue is not the type of evidence that Utah courts "have previously deemed highly prejudicial." *See State v. Johnson*, 784 P.2d 1135, 1141 (Utah 1989); *cf. State v. Moore*, 788 P.2d 525, 527 (Utah Ct.App.1990) (listing three categories of highly prejudicial evidence as recognized by the Utah Supreme Court: "(1) gruesome photos of a homicide scene; (2) a rape victim's past sexual activities with someone other than the accused; and (3) statistical matters not susceptible to quantitative analysis such as witness veracity." (citations omitted)). *Compare, e.g., State v. Jaeger*, 1999 UT 1, ¶ 19, 973 P.2d 404 (concluding that records containing the victim's statements that she previously had attempted suicide were "not the type of evidence that has an unusual propensity to unfairly prejudice, inflame, or mislead the

---

7. Trial testimony established that these plastic baggies were both pink, but the one found on Downs was smaller than the one found during the search of her home.

8. Downs arrived home at approximately 7:00 p.m., the search warrant was executed at about 10:30 or 11:00 p.m., and officers discovered the drugs in the pocket of her allegedly borrowed jeans at the jail sometime that night or early the next day.

jury"), *Moore,* 788 P.2d at 527 (same, for pornographic materials), *and Johnson,* 784 P.2d at 1141 (holding that a blood-stained police uniform was not "highly prejudicial"), *with, e.g., State v. Dunn,* 850 P.2d 1201, 1222 (Utah 1993) ("[G]ruesome photographs of a homicide victim's corpse will unfairly prejudice and inflame the jury and therefore require the proponent to show that they have unusual probative value."), *and State v. Dibello,* 780 P.2d 1221, 1230 (Utah 1989) (holding that "the gruesome portion of the videotape"—showing close-up shots of the victim's "stab wounds in her chest, her slit throat, and her beaten face," as well as her blood-covered neck, shoulders, and blouse— "should have been excluded under rule 403"). Because the evidence at issue is "not the type of evidence that has an unusual propensity to unfairly prejudice, inflame, or mislead the jury," there is a presumption that it is admissible. *Jaeger,* 1999 UT 1, ¶¶ 18–19, 973 P.2d 404; *see Moore,* 788 P.2d at 527.

¶ 14 Second, the evidence here does not have "an undue tendency to suggest decision on an improper basis, . . . such as bias, sympathy, hatred, contempt, retribution or horror." *See Maurer,* 770 P.2d at 984 (internal quotation marks omitted); *see also United States v. Rodriguez,* 192 F.3d 946, 951 (10th Cir.1999) ("[W]e see no potential that the value of the seized drugs could serve to provoke an unfair emotional response against [the defendant] wholly apart from [the jury's] judgment as to his guilt or innocence of the crime charged." (second alteration in original) (internal quotation marks omitted)). There was nothing particularly horrific about the admitted evidence to indicate that the jury would have based its verdict on such emotional considerations. *See Maurer,* 770 P.2d at 984. Moreover, any prejudicial effect the evidence may have had was outweighed by its highly probative value concerning the very elements of the crime charged which Downs disputed—knowledge and intent.[9]

*See State v. Kell,* 2002 UT 106, ¶ 35, 61 P.3d 1019. The fact that she was living in a house where police had observed activity consistent with drug trafficking and executed a search warrant that yielded controlled substances and drug paraphernalia provided context and made her claim of ignorance about the pink baggie in her pocket considerably less believable. *See State v. Boyd,* 2001 UT 30, ¶ 24, 25 P.3d 985 (holding that the trial court did not exceed its discretion under rule 403 by allowing evidence that "provided background for the [crime charged]"); *cf. Johnson,* 784 P.2d at 1141 ("The roommate's testimony may well have prejudiced defendant. 'However, if the evidence has relevancy to explain the circumstances surrounding the instant crime, it is admissible for that purpose; and the fact that it may tend to connect the defendant with another crime[, wrong, or act] will not render it incompetent.'" (alteration in original) (quoting *State v. Daniels,* 584 P.2d 880, 882 (Utah 1978))).

¶ 15 Finally, we do not think that the trial court exceeded its discretion on the basis of confusion. *See* Utah R. Evid. 403. The trial court, to minimize jury confusion, did not admit the unrelated search warrant or the affidavit documents themselves, stating that admitting such documentation would be "confusing to the jury because the focus [is] then . . . on the document." *See, e.g., State v. Bluff,* 2002 UT 66, ¶ 60, 52 P.3d 1210 ("[T]he videotape itself was not shown to the jury, thus considerably minimizing its impact."). The trial court was concerned that "a jury may give [the warrant] more weight simply because it is a document itself and because that is not what i[s] at issue in the knowing and intentional possession here in this case." The court did allow testimony about the search warrant. However, the trial court instructed the jury that it "must find from all of the evidence and beyond a reasonable doubt . . . [t]hat . . . Downs[ ] was within a

---

9. In *Rodriguez,* the Tenth Circuit explained:

    [T]he unfair prejudice aspect of Rule 403 cannot be equated with testimony which is simply unfavorable to a party, and here, evidence of the value of the drugs directly addresses an element of the offense—[the defendant]'s knowledge. *If that evidence is interpreted by the jury to connect [the defendant] to a drug ring* or to bad people who smuggle drugs, that cannot be considered "unfair" prejudice since that is at the core of the criminal charges against him.

    *United States v. Rodriguez,* 192 F.3d 946, 950–51 (10th Cir.1999) (emphasis added) (citation and internal quotation marks omitted).

correctional facility" when she possessed the drugs, thereby focusing its deliberations on this later event rather than those that occurred earlier at the residence.

¶ 16 Further, through cross-examination of the detective who took Downs to jail, defense counsel was able to explain to the jury that Downs was taken there on the basis of two unrelated misdemeanor warrants, and further implied that the warrants were traffic-related and not drug-related. It was clear that Downs was taken to the jail due to events unrelated to the drugs that were found in her home.

## CONCLUSION

¶ 17 Based on the foregoing analysis, "there is [no] likelihood that injustice resulted" from the trial court's exercise of discretion here. *See State v. Gomez*, 2002 UT 120, ¶ 36, 63 P.3d 72 (internal quotation marks omitted). Therefore, "we will not reweigh and reevaluate the relevant factors and balance for ourselves the probative value of the testimony versus its potential prejudice in this case." *Id.* By asserting a defense of lack of knowledge, Downs made the evidence highly probative. The trial court acted within its broad discretion in weighing that probative value against the risk of unfair prejudice. Accordingly, we affirm.

¶ 18 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and JUDITH M. BILLINGS, Judge.