2021 UT App 10

# THE UTAH COURT OF APPEALS

MICHELLE ANDERSON-WALLACE,
Appellee,
*v.*
K. LYNN RUSK AND NEW PRIME INC.,
Appellants.

Opinion
No. 20190361-CA
Filed February 4, 2021

Second District Court, Ogden Department
The Honorable Mark R. Decaria
No. 160905589

Stuart H. Schultz, Peter H. Christensen, Marshall J.
Hendrickson, and S. Spencer Brown, Attorneys
for Appellants

Nathan S. Morris, Lena Daggs, and Zachary E.
Peterson, Attorneys for Appellee

JUDGE KATE APPLEBY[1] authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and DAVID N. MORTENSEN
concurred.

APPLEBY, Judge:

¶1    K. Lynn Rusk (Rusk) and New Prime Inc. (Prime)
(collectively, Defendants) appeal from the jury's verdict
awarding damages for the wrongful death of Kenneth Wallace

---

1. The Honorable Kate Appleby, began work on this case as an
active member of the Utah Court of Appeals. She completed her
work as a senior judge sitting by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

(Wallace) to his wife, Michelle Anderson-Wallace (Plaintiff), and his children. We reverse.

BACKGROUND

¶2 Shortly after midnight on July 19, 2015, Wallace was killed in a truck-pedestrian collision when he was struck in the head by the mirror of a passing semi-truck driven by Rusk and owned by her employer, Prime. Prior to the collision, the truck was traveling in the right lane of the interstate freeway. As the truck approached an exit, Rusk noticed "the flashing hazard lights of a vehicle" parked on the right shoulder. In response, she began to decelerate and attempted to move the truck into the middle lane. Before she could do so, Wallace "bolt[ed]" from the front end of the disabled vehicle, "running toward [Rusk's] vehicle" at an angle. Rusk "jerked the wheel hard to the left" to avoid Wallace but "lost sight of him" and then "heard the thump."

¶3 When law enforcement personnel arrived they found Wallace's body "lying on the fog line of the right shoulder." An autopsy identified the manner of death as suicide, caused by blunt force injuries to his head "sustained when he intentionally ran into oncoming traffic on the freeway." It also revealed that Wallace had a blood alcohol content (BAC) of 0.17 when he died.

¶4 Plaintiff filed suit against Defendants, seeking damages for Wallace's wrongful death. She alleged the collision occurred "at approximately the fog line on the right side" of the freeway and therefore Rusk was driving negligently when she hit Wallace. Defendants denied any fault, insisting the point of impact was in the lane of travel and that Wallace's own conduct, not Rusk's alleged negligence, caused his death.

¶5 Defendants' theory was that Wallace's death was a suicide. On the night of the collision, Plaintiff and Wallace returned home from dinner at about 10:30 p.m. Sometime between Wallace's return from dinner and the time of the

collision at about 12:10 a.m., Wallace consumed enough alcohol to reach a 0.17 BAC, drove his car to the freeway, and stopped on the right shoulder. To support their theory, Defendants retained an accident reconstructionist, whose conclusions corroborated eyewitness testimony that Wallace was inside Rusk's lane of travel at the time of the collision. Defendants also retained an expert toxicologist (Expert) to testify about "the effects [Wallace] is likely to have experienced [at the time of the collision], based on the claim . . . that [Wallace] had a [BAC] of 0.17."

¶6 Plaintiff filed a motion in limine[2] seeking to exclude any "evidence, testimony or reference to alcohol use by [Wallace]" and to exclude Expert from testifying at trial. She argued the evidence should be excluded because it is "irrelevant, completely speculative, and because its probative value, if any, is substantially outweighed by the danger of unfair prejudice pursuant to Rule 403 of the Utah Rules of Evidence."

¶7 Defendants opposed the motion in limine. They argued that evidence of Wallace's BAC was not only relevant, but probative because "it answers an essential question . . . whether [Wallace] entered the lanes of travel before encountering the truck," and thus whether Wallace's death was caused by his own negligence and not Rusk's alleged negligent driving. They further argued that Expert's testimony would help the jury understand "the circumstances affecting Wallace at the time of his death," including the effects Wallace's BAC "would have had over his conduct and decision-making capacity leading up to and at the time of" his death. Although Expert had conceded in his deposition that he was unable to describe exactly how Wallace's inebriation affected his ability to walk or run, Expert

---

2. "A motion in limine is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered." *State v. Bermejo*, 2020 UT App 142, ¶ 8 n.4, 476 P.3d 148 (quotation simplified).

was unequivocal that Wallace's judgment and thought processes would have been altered or impaired, his inhibitions would have been "removed," and he would not have been normally coordinated.

¶8    The district court granted Plaintiff's motion, excluding all evidence of Wallace's BAC and Expert's testimony. It ruled that although relevant, the evidence "invites too much speculation on the part of the jury, so its probative value is outweighed by the danger of unfair prejudice." The court concluded that there was a substantial risk the jury would find the decedent negligent just because he had been drinking.

¶9    Defendants also filed a motion in limine. They sought to prevent Plaintiff from presenting any evidence of economic damages[3] because she did not disclose them during discovery. The district court granted the motion to exclude evidence of economic damages and instructed the jury that it "may calculate damages for the loss of such things as love, companionship, society, comfort, pleasure, advice, care, protection and affection which the [Plaintiff and the children] have sustained and will sustain in the future." The special verdict form also listed the type of damages the jurors could consider. It asked them to determine "[w]hat amount fairly compensates [Plaintiff and the children] for the loss of love, companionship, society, care, protection and affection of [Wallace]." Neither the instructions nor the verdict form suggested that the jury could award damages to compensate Plaintiff for Wallace's lost wages or loss of future earning capacity or support.

---

3. Economic damages "are hard amounts that are subject to careful calculation such as the cost of medical and other necessary care or a decrease in earning ability." *Pinney v. Carrera*, 2020 UT 43, ¶ 35, 469 P.3d 970 (quotation simplified). In contrast, noneconomic damages "measure the amount needed to compensate an individual for a diminished capacity for the enjoyment of life." *Id.* ¶ 36 (quotation simplified).

¶10     All parties agreed the primary liability question for the jury was whether Wallace "died as a result of running out into the lane of travel or whether the collision occurred on the shoulder." Plaintiff argued that Wallace was a "meticulous and prepared person" and there was nothing in his "history that might indicate that [he] was the type [who] would run out into the lane of travel." Plaintiff's counsel told the jury they would be abandoning their common sense if they concluded Wallace ran into traffic.

¶11     In contrast, Defendants' theory of the case was that Wallace's death was a suicide but he "wanted it to look like an accident." In Defendants' view, Wallace had a serious alcohol problem and his high BAC at the time of the collision explained why his coordination, judgment, and inhibitions were lowered, and why he darted in front of the approaching truck. Additionally, Defendants believed Wallace's habitual drinking—which they wanted to show caused trouble in his home life—provided a motive for suicide and also was relevant to Plaintiff's claim for non-economic damages.

¶12     Defendants were hampered in presenting their theory of the case to the jury by the district court's decision to exclude all evidence of Wallace's alcohol problems and his BAC at the time of the collision. But Defendants nevertheless attempted to present their suicide theory at trial, arguing that Wallace deliberately ran in front of the approaching truck and the impact occurred in Rusk's lane of travel. They also presented evidence of Wallace's financial difficulties and obtained a jury instruction suggesting his vehicle was not actually disabled when he pulled over and parked on the shoulder of the freeway shortly before the collision.

¶13     The special verdict form asked the jury to determine which of the parties were at fault for the collision and to apportion fault among all responsible parties. Following a multiday trial, the jury apportioned 55% fault to Rusk, 20% to Prime, and 25% to Wallace. It awarded total non-economic

damages in the amount of $2.5 million. After deducting 25% of the award based on the jury's allocation of fault to Wallace, Plaintiff and Wallace's two surviving children collectively were awarded $1.875 million in damages.

ISSUES AND STANDARDS OF REVIEW

¶14 Defendants first argue the district court erred by excluding evidence of Wallace's alcohol use and his BAC at the time of his death. We review a district court's decision to exclude evidence under rule 403 for abuse of discretion. *Northgate Vill. Dev., LC v. City of Orem*, 2019 UT 59, ¶ 14, 450 P.3d 1117. But "an erroneous decision to admit or exclude evidence based on rule 403 cannot result in reversible error unless the error is harmful." *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992).

¶15 Defendants also argue the district court erred by allowing Plaintiff's counsel to raise during closing argument Wallace's lost earning capacity. Because "[t]he determination of whether remarks made during closing argument improperly influenced the verdict is within the sound discretion of the [district] court," *Green v. Louder*, 2001 UT 62, ¶ 35, 29 P.3d 638, we will not overturn such a decision absent an abuse of discretion.

ANALYSIS

I. Evidence of Wallace's Blood Alcohol Content and Alcohol Use Was Admissible Under Rule 403 of the Utah Rules of Evidence.

¶16 Defendants argue the district court committed reversible error when it excluded evidence of Wallace's struggle with alcohol and his BAC at the time of his death under rule 403 of the Utah Rules of Evidence. They contend the court erred in concluding the evidence was more prejudicial than probative and assert they were prejudiced by the exclusion because they could not use the evidence to explain why Wallace ran in front of

the truck, bolster eye-witness testimony placing Wallace in the lane of travel, or rebut Plaintiff's testimony "about Wallace's virtues as a husband and father."

¶17 The district court granted Plaintiff's motion in limine to exclude Expert and evidence of Wallace's alcohol abuse, including evidence of his BAC when he died. Although the court found the evidence relevant, it nevertheless excluded it under rule 403, finding that any probative value was substantially outweighed by the risk of unfair prejudice. The court reasoned the evidence "invites too much speculation on the part of the jury" because there was "no evidence of how [Wallace] was affected by alcohol." The court also noted that because "[s]ome Utahns disapprove of alcohol use," there was a "high risk" the jury would find Wallace negligent just "because he had been drinking."

¶18 Under rule 403 of the Utah Rules of Evidence, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." *See* Utah R. Evid. 403. "Because all effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered," rule 403 does not require a court to exclude all prejudicial evidence. *State v. Burke*, 2011 UT App 168, ¶ 34, 256 P.3d 1102 (quotation simplified). "Rather, the rule only requires that the [district] court measure the danger the evidence poses of causing *unfair* prejudice to a defendant. Unfair prejudice within the context of rule 403 means an undue tendency to suggest decision on an improper basis." *Id.* (quotation simplified).

¶19 To determine whether the district court erred in excluding the alcohol evidence, we first must review its probative value. "The probative value of evidence is judged by the strength of the evidence and its ability to make the existence of a consequential fact either more or less probable and the proponent's need for the evidence." *State v. Johnson*, 784 P.2d 1135, 1140 (Utah 1989)

(quotation simplified). Under this standard, the evidence was highly probative.

¶20    All parties agreed the primary liability question for the jury was whether Wallace "died as a result of running out into the lane of travel or whether the collision occurred on the shoulder." Because the liability determination turned on Wallace's conduct at the time of the collision, evidence of his BAC was highly probative because the BAC data allowed Expert to reach conclusions about how this level of alcohol directly influenced Wallace's conduct. Expert was prepared to testify that based on Wallace's 0.17 BAC he was "likely experiencing emotional-swings, blunted feelings, disinhibition, gross and fine motor control impairment, and slurred speech." Thus, Wallace's elevated BAC had direct bearing on why Wallace may have been in the lane of travel rather than on the shoulder at the time of the collision, either because his judgment was likely clouded or his natural inhibition against suicide may have been blunted. Such information also is consistent with the eyewitness testimony that Wallace ran into the path of the oncoming truck and provides an explanation or motive for Wallace's behavior that night. Finally, the evidence that Wallace had consumed enough alcohol to cause him to have an elevated BAC at the time of the collision directly rebutted Plaintiff's testimony that running into the lane of travel "doesn't sound like something [Wallace] would do."

¶21    Expert was questioned extensively during his deposition as to the effect of a 0.17 BAC. He testified as follows:

> Q: . . . I understand that you believe he was not fit
> to drive there, but once he's there, do you have any
> opinion as to how the alcohol affected or impacted
> this overall accident?
>
> A: Well, certainly his judgment isn't going to be
> what it was when he was sober, his thought
> processes aren't going to be what they were, he's
> removed the social brakes, you've removed the

part of us, I guess, that would make us interact, you know, in a civil fashion. He's not going to be as coordinated most certainly, he might be nauseous, he might throw up. I don't believe there was any evidence of that at the crime scene.

How his, you know, inability–not inability, but to walk, to run, how that might affect this situation, I'm not—it would be impaired. Whether that made any difference or not in the end, I don't—

Q: You don't know?

A: I don't know.

Q: That would require speculation in that respect?

A: In that respect, yeah.

Although Expert was unable to articulate exactly how Wallace's inability to walk or run played a role in the collision, nothing suggests that the broader effect of Wallace's 0.17 BAC was uncertain. Expert testified without equivocation that Wallace's judgment was "certainly" diminished and his high BAC would have impaired his thought processes and his coordination. The fact that Expert was not able to articulate the precise manner in which Wallace's certain impairment caused the collision did not deprive the evidence of its probative value in a case where the jury was asked to apply a preponderance of the evidence standard. Neither did it undermine the probative value of the evidence as to Wallace's lack of judgment and general impairment or to Defendant's theory that the collision was a suicide.

¶22   Wallace's history of alcohol abuse also was highly probative on the issue of Plaintiff's damages. Plaintiff sought non-economic damages for herself and the children for the loss

of Wallace's "love, companionship, society, care, protection and affection." Her damages claim therefore depended on the quality of the relationship the Wallace family shared. Plaintiff testified to a harmonious family life. But Defendants obtained Plaintiff's Facebook posts that, in their view, painted a different picture. In Defendants' estimation, the posts indicated that Wallace had a drinking problem and was attempting to save money for addiction treatment, and Defendants planned to use the posts to directly impeach Plaintiff's damages testimony. While we accept that a history of common casual consumption of alcohol may be of such small consequence that evidence of such consumption might be well within the discretion of a trial court to exclude, where claims of extensive abuse and its effects on intrafamilial relationships can be shown or inferred, the history of alcohol use becomes far more probative. *See Marlow v. Cerino*, 313 A.2d 505, 515 (Md. Ct. Spec. App. 1974) (claim for loss of consortium by spouse "placed squarely in issue the nature and details of the relationship" and how the alcoholism evidence affected spouse's claim for damages).

¶23　Having concluded that the excluded evidence of Wallace's BAC and history of alcohol abuse was highly probative as to both liability and damages, we turn to the second step of our rule 403 analysis. This involves balancing its probative value against its potential for unfair prejudice. *See State v. Downs*, 2008 UT App 247, ¶ 11, 190 P.3d 17. The type of prejudicial evidence that "calls for exclusion" is evidence that creates "an undue tendency to suggest decision on an improper basis, commonly but not necessarily an emotional one, such as bias, sympathy, hatred, contempt, retribution or horror." *State v. Maurer*, 770 P.2d 981, 984 (Utah 1989) (quotation simplified). In short, it is evidence that "may cause the jury to base its decision on something other than the established propositions of the case." *State v. Lindgren*, 910 P.2d 1268, 1272 (Utah Ct. App. 1996) (quotation simplified).

¶24　Though the evidence of Wallace's alcohol use was damaging to Plaintiff's theory of the case, the prejudicial nature

of that evidence did not substantially outweigh the probative value of that evidence. Rather, evidence of Wallace's high BAC and resulting effect was damaging precisely because such evidence was highly probative of the very questions the jury was required to decide. The excluded evidence made it more likely that Wallace ventured into the highway before being struck by the truck. The evidence of Wallace's consumption of alcohol on the night of the accident and his habitual use also bore directly on the question of damages. Where evidence is undeniably probative of the central issue in a case, the danger of *unfair* prejudice *substantially* outweighing the probative value of the evidence is low. Here, while we recognize the prejudicial effect of this evidence in that the jury may have thought less of Wallace, we do not believe information about Wallace's BAC at the time of the accident or his struggle with alcohol would have aroused the jury's emotions or caused it to "base its decision on something other than the established propositions of the case." *See id.* (quotation simplified); *see also Colley v. Peacehealth*, 312 P.3d 989, 998 (Wash. Ct. App. 2013) ("While prejudice always clings to alcohol abuse to some degree, the trial court could reasonably conclude that the evidence of Colley's heavy consumption of alcohol in the past had probative value that outweighed the prejudice."). In short, the danger of unfair prejudice does not substantially outweigh the evidence's probative value.

¶25   We conclude the district court exceeded its discretion by focusing on the alcohol evidence's potential for prejudice without considering or correctly appreciating its highly probative value. *See generally Woods v. Zeluff*, 2007 UT App 84, ¶ 8, 158 P.3d 552 ("The exclusion of relevant evidence under Rule 403 is an extraordinary remedy to be used sparingly." (quotation simplified)). Indeed, the district court appeared to focus exclusively on the damage the evidence may have on Plaintiff's case without balancing it against the damage its exclusion would cause to Defendants' theory of the case. This was error because rule 403 analysis requires that the evidence be viewed "in the light most favorable to its proponent, maximizing

its probative value and minimizing its prejudicial effect." *Id.* (quotation simplified).

¶26 Plaintiff argues the district court properly excluded the alcohol evidence because it "invite[d] too much speculation from the jury." It is unclear from the district court's ruling whether the possibility of speculation constituted an independent ground for its exclusion of the evidence or simply an explanation as to why it believed the evidence was more prejudicial than probative. But if it were an independent ground for exclusion, the court's decision to exclude evidence on that basis was also erroneous. Wallace's autopsy revealed that at the time of the collision he had a 0.17 BAC. Expert's opinion about Wallace's condition at the time of the collision was based on this uncontested finding and thus was not speculation.

¶27 Accordingly, we conclude that the trial court exceeded its discretion in excluding both types of alcohol evidence—evidence of use (the BAC) on the night in question (liability) and evidence of Walace's alcohol use in general (wrongful death damages).[4] Although Expert was unable to articulate exactly how Wallace's impaired coordination played a role in the collision, nothing suggests the broader effect of Wallace's 0.17 BAC required speculation. Expert testified without equivocation that Wallace's judgment was "certainly" diminished and that his high BAC would have impaired his thought processes and his coordination.

¶28 Standing alone, the district court's erroneous decision to exclude the alcohol evidence under rule 403 does not warrant

---

4. In the appropriate case, a court might be required to give a jury a limiting instruction. For example, where the alcohol evidence only is probative regarding its effect on family relationships, a limiting instruction would inform the jury that that same evidence could not be considered on the issue of liability.

reversal. Reversal is warranted only where the erroneous evidentiary ruling is harmful, meaning that "absent the erroneous exclusion, there is a reasonable likelihood of an outcome more favorable to [its proponent]." Id. ¶ 10 (quotation simplified).

¶29  In this case, the erroneous exclusion of the alcohol evidence and Expert's testimony was harmful to Defendants on issues of both liability and damages. As previously discussed, the alcohol evidence was the lynchpin of Defendants' theory regarding the cause of the collision and explained why Wallace entered the lane of travel. Indeed, having convinced the trial court here to exclude the BAC evidence, Plaintiff's counsel then argued to the jury that Wallace was a "meticulous and prepared person" and there was nothing in his "history that might indicate that [he] was the type [who] would run out into the lane of travel." Plaintiff's counsel then told the jury they would be abandoning their common sense if they concluded Wallace ran into traffic. Of course, significant alcohol consumption might explain the lapse of judgment. The BAC evidence was therefore highly probative regarding apportionment of fault. Although the district court excluded any evidence of Wallace's high BAC at the time of the collision, the jury nevertheless apportioned 25% fault to Wallace, likely based on the suggestion of Plaintiff's counsel that Wallace was standing too close to the fog line. There is a reasonable likelihood that the jury would have apportioned at least some additional fault to Wallace had it been aware that he had consumed enough alcohol for him to reach a 0.17 BAC and the effect that his BAC would have had on his judgment and thought processes. In short, we conclude there would have been a reasonable likelihood of a more favorable outcome for Defendants on the liability issue if the alcohol evidence had been admitted.

¶30  Exclusion of the alcohol evidence was equally harmful to Defendants in defending against Plaintiff's claim for non-economic damages. Plaintiff capitalized on the district court's exclusion of the alcohol evidence by painting a picture of an

idyllic home life that Defendants were hamstrung in refuting.[5] It is reasonable to conclude the jury would have agreed on a lower award of non-economic damages had it been aware of Wallace's habitual drinking and its adverse effect on his family relationships.

¶31 Because we find that the erroneous exclusion of the evidence was harmful, we vacate the jury's verdict and remand the matter for a new trial.

## II. Plaintiff's Counsel's Comments About Wallace's Earning Capacity During Closing Argument Were Not Improper.

¶32 Defendants also argue the district court erred when it allowed Plaintiff's counsel to raise Wallace's lost future earnings in her closing argument. Defendants contend this was improper because it "confused the jury" and called to its attention facts about Wallace's earning capacity that were "not in evidence and not relevant to any claim before the jury." Because we have determined that Defendants are entitled to a new trial, we address this issue only to guide the district court should the issue arise again on remand.

¶33 "In closing argument, attorneys have considerable latitude concerning the issues they raise and have the right to fully discuss from their perspectives the evidence and all inferences and deductions it supports." *State v. Reid*, 2018 UT App 146, ¶ 49, 427 P.3d 1261 (quotation simplified). "However, that latitude does not extend to counsel calling the jury's attention to material that the jury would not be justified in

---

5. The district court acknowledged the family dysfunction resulting from Wallace's alcohol use was "fair game" for Defendants, but nevertheless excluded any evidence of Wallace's habitual drinking after Plaintiff's counsel argued that admitting the evidence "would just ruin everything."

considering in its verdict." *Boyle v. Christensen*, 2011 UT 20, ¶ 18, 251 P.3d 810 (quotation simplified).

¶34    Before trial, the district court granted Defendants' motion to exclude evidence of Plaintiff's economic damages, and the jury instructions and special verdict form stated that compensable damages were those designed to compensate Plaintiff for the loss of Wallace's "love, companionship, society, care, protection and affection." Plaintiff complied with the court's ruling and did not introduce such evidence. But in closing argument, Plaintiff's counsel told the jury it should not "penalize" Plaintiff because Wallace "only made $19 an hour, $20 an hour, and over the next 20 years would have made about $800,000." Defendants objected there was "no evidence" of Wallace's future income, but the district court overruled the objection and Plaintiff's counsel continued, comparing Wallace's hourly rate with that of one of Defendants' experts and explaining that Wallace's income "is no indication" of what his family members "are entitled to in this case."

¶35    We see no error here. Plaintiff's counsel made the argument in response to evidence that Defendants offered during trial. It was Defendants who opened the door by offering evidence of Wallace's hourly wage, limited earning capacity, and Plaintiff's corresponding financial problems. In opening statement, Defendants' counsel told the jury it would hear about Wallace's employment, that he "was making about 19 to $20 an hour" and that the collision occurred during a time of year when work was "very slow" for him. During Plaintiff's cross-examination, Defendants' counsel specifically asked whether Wallace's "regular hourly rate was about $19," whether Wallace was "guaranteed 40 hours a week," and whether "finances were a struggle" for the family. Finally, Defendants' counsel elicited testimony from a responding officer that when informed about Wallace's death, Plaintiff mentioned Wallace "had not been in a good financial state."

¶36 Based on the foregoing, the arguments raised by Plaintiff's counsel during closing argument regarding Wallace's future earning capacity were not improper. The statements relied on evidence offered by Defendants and were made in response to arguments raised by Defendants in the first instance. The jury instructions and the special verdict form expressly limited the jury's consideration to non-economic damages, and nothing in the record suggests that the jury disregarded those instructions.

## CONCLUSION

¶37 The district court erred in excluding evidence of Wallace's alcohol use and Expert's testimony under rule 403 of the Utah Rules of Evidence because the significant probative value of the evidence was not substantially outweighed by its potential for unfair prejudice. Because this error was harmful, we vacate the jury's verdict and remand the case for a new trial.

¶38 Reversed.

———————