UNITED STATES of America, Plaintiff,

v.

930.65 ACRES OF LAND IN JEFFERSON COUNTY, KANSAS; Martin and E. Fern Vanderpool, and Unknown Owners, Defendants.

Civ. A. No. T–4053.

United States District Court
D. Kansas.

Aug. 14, 1968.

---

Benjamin E. Franklin, U. S. Atty., Clarence Malone, Asst. U. S. Atty., Topeka, Kan., for plaintiff.

Marlin Brown, Council Grove, Kan., William Leech, Oskaloosa, Kan., for defendants.

## MEMORANDUM OF DECISION

TEMPLAR, District Judge.

On May 27, 1966, plaintiff filed a complaint in condemnation seeking to acquire a portion of the fee simple title to Tract No. 453 in this proceeding. At the same time, a declaration of taking was filed and a deposit made in the registry of the Court equal to plaintiff's estimate of just compensation.

Under provisions of Rule 71A(h), a Commission was appointed by the Court to determine the amount of just compensation due to the owners for all of their interest in the property acquired by plaintiff. The case was assigned for trial and was heard before the Commission and a report was filed by it.

The report of the Commission included the statement that "the landowner contended that the 34.85 acres in the remainder was pasture land with a nominal value after the taking, and the government contended that the remainder was development land after the taking."

The property acquired was for a public use declared in the complaint to be "necessary adequately to provide flood control in the Missouri River Basin and other uses incident thereto."

The report of the Commission was filed by the Commission on May 15, 1968. The report, prior to the filing, had been submitted to counsel for the parties and objections had been filed by the defendant landowners. These were considered by the Commission and were overruled by it.

The report of the Commission discloses that it found, in addition to the facts stipulated by the parties, that the land, at the time of taking, had a value of $10,200.00, and that the value of the remaining 34.85 acres of pasture land, after taking, had a fair market value of $3,485.00, or $100.00 per acre. The value of the 81.35 acres of pasture land, before taking, was found to be $100.00 per acre. Thus, the Commission found no depreciation in value of the remaining 34.85 acres, even though it appears, without controversy, that the severed remainder was left with no water or suitable pond site; there was no access to the remaining acreage nor was provision for access contemplated or intended; and, among other things, replacement of fences would be required to make the remainder usable.

The Commission found that the highest and best use of the tract, before taking, was livestock grazing and that the highest and best use, after the taking, was *possible* development. The Commission also found that after value was affected by the fact that 50% or less of the remainder of the tract would have a lake view and that lack of access to the remainder was a serious detriment, as was the lack of water and the possibility that 200 yards of fence would be needed.

The Commission based their findings of before value, in part, upon the testimony of landowner witnesses, Haley and Brink, and of government witness, Copple. Summaries of their testimony is contained in the report. The Commission determined that the comparables referred to by the witnesses as "Wagner to Mock and Berlin," and "Brey to Simon," were not comparable but that the sale of "Smith to Seeton" had elements of comparability.

The Court has not been supplied with a transcript of all the testimony offered in the case, but has been furnished with a transcript of the testimony of Copple, the government's only witness. The Court has carefully read this transcript and concludes that the finding by the Commission of the fair market value of the remaining portion of the tract is clearly erroneous because it was not supported by competent evidence and was based on an erroneous application of law. The government urged upon the Commission an improper rule of enhancement in value of the remainder of the tract, only a portion of which is appropriated. This incorrect rule, the Commission obviously

followed in making its finding of after value.

The rule contended for by the government and followed by the Commission is contained in the communication of government's counsel to the Commission under date of December 8, 1967. The erroneous rule asserted by the government, reads as follows:

"In a federal condemnation case, where only part of a tract of land is taken, the measure of compensation is the difference between the market value of the entire tract at the time of taking, excluding any enhancement from the project, and the market value of the remainder, including enhancement from the project."

The correct rule was established in the case of Bauman v. Ross, 167 U.S. 548, 574, 17 S.Ct. 966, 42 L.Ed. 270, cited with approval in United States v. Grizzard, 219 U.S. 180, at page 185, 31 S.Ct. 162, at page 164, 55 L.Ed. 165, and reads:

"Consequently, when part only of a parcel of land is taken for a highway, the value of that part is not the sole measure of the compensation or damages to be paid to the owner; but the incidental injury or benefit to the part not taken is also to be considered. When the part not taken is left in such shape or condition as to be in itself of less value than before, the owner is entitled to additional damages on that account. When, on the other hand, the part which he retains is specially and directly increased in value by the public improvement, the damages to the whole parcel by the appropriation of part of it are lessened."

The government and the Commission overlooked the requirement that any enhancement in value of the remainder must be by reason of special and direct benefit to the tract, not those of a general nature.

This remainder of the tract, a part of which was taken, is located on a high bluff. It has no frontage on the lake.

It is not accessible by any traveled means. It is without water. The witness Copple attributes benefit because of a "view," which he says might cause a developer to become interested in it. Obviously, the testimony of Copple was a matter of pure conjecture and speculation because the comparables he referred to in his testimony were found by the Commission not to be comparable. Copple testified that the whole tract was worth $7,150.00 before taking; that the remainder, after taking, an incredible $10,500.00, and this for a remaining 34 acres of brush covered land to which there was no access, no water, no timber, did not border on the lake created by the project, and was not accessible to the lake in any event. The only basis advanced by the government's sole witness as justification for any enhancement was because, as he stated, it afforded a "view" of the lake, a privilege shared by every other property owner having property in the basin of the stream on which the reservoir was established. This "view," incidentally, only existed on less than one-half of the tract involved. The witness testified that:

"This value is there. We know it. There is no question. Because there are sales around the reservoir which are comparable to this property which is being developed for uses such as this property is adaptable to."

But the comparables he used to support this testimony were found to be not comparable by the Commission.

In considering the situation here, we should be reminded that whether benefits are special or general, the courts are agreed on the proposition that remote, uncertain, contingent, imaginary, speculative, conjectural, chimerical, mythical, or hypothetical benefits cannot, under any circumstances, be taken into consideration. The reason for this is that otherwise the property owner might be compelled to pay for something which would never be in existence. It has been said that if speculative or chimerical benefits could be considered,

the constitutional safeguards for protecting the citizen in the enjoyment of his property would be rendered of no avail. The rule that uncertain benefits, of the types described above, cannot be deducted has been applied in a great variety of situations. Furthermore, benefits cannot be considered, if they are not reasonably definite or certain, or positive, or proximate, or practical, or substantial, or within the range of present view, capable of financial realization within a reasonable period, or actually affecting the present worth of the land. *Prospective benefits cannot be considered, if they constitute only future possibilities,* and do not enhance the present value of the property allegedly benefited, but may be considered if it is sufficiently certain that they will be realized. See 145 A.L.R. 124.

In this connection, it must be borne in mind that if this remote 34-acre tract is to be developed for its "view," someone must spend substantial amounts of money to get access to it, to subdivide it, to get water and utilities to it, all with the hope that prospects can be attracted to it because of the so-called "view," since it is on a high bluff and the water in the lake is not accessible to it. Consider also that there are many other tracts favorably situated around the reservoir which are suitable for development. Benefits that can be realized by the expenditure of substantial sums of money so uncertain as this "view" of the lake development, are not the kind of benefits Congress contemplated in enacting 33 U.S.C. § 595. See United States v. 2,635.04 Acres of Land, 336 F.2d 646 (6 CA).

As was said in Olson v. United States, 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236:

"Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth."

Turning now to the consideration of the nature of special benefits and considering the general law on the subject, since, this court has not had the occasion heretofore to interpret the meaning of "specifically benefited" as used in the eminent domain statute, we are immediately confronted with this observation made by one of the leading authorities in the field:

"* * * Upon this subject there is a great diversity of opinion and more rules, different from and inconsistent with each other, have been laid down than upon any other point in the law of eminent domain." 3 Nichols, Eminent Domain, 3rd Ed., § 8.62, p. 39.

This observation was made by the author after an exhaustive research of the case law and he concludes:

"The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object which justified the taking, and special benefits are those which arise from the peculiar relation of the land in question to the public improvement." 3 Nichols, Eminent Domain, 3rd Ed., § 8.6203, p. 45.

This definition of and distinction between general and special benefits, while fundamentally sound, is too general to admit of ready application to specific situations. The difficulty arises not so much from recognition of the basic principles of categorizing special and general benefits as in the application of the same to particular factual situations. The application of the distinction between general and special benefits is influenced by the nature of the eminent domain proceedings and the manner in which special benefits are to be utilized.

The determination of what shall constitute a special benefit, to be used as an offset to the value of the property taken under the limitation that

**678**

only special benefits shall be so used, is governed by the equitable principle which serves to justify the limitation, namely, that it is unfair for a landowner to be taxed specially through the reduction or refusal of compensation by offsetting benefits which his neighbors, whose lands are not taken, nonetheless receive free of charge. It is to avoid the unfairness of making one man pay in land for that which another receives free that special benefits are narrowly conceived.

> "Viewed as a matter of justice, it seems much fairer to exclude the general benefits. They are very difficult to assess accurately, and, as they usually arise from an increase in population or business prosperity expected to follow the improvement, they will never be received if the results hoped for do not follow. Moreover, the owner whose land is taken is placed in a worse position than his neighbor whose estate lies outside the path of the improvement and who shares in the increased values without any pecuniary loss. The owner may also well argue that the general taxes which he pays are justified only by the general benefit that he receives from the undertakings and improvements made under public authority." 3 Nichols, Eminent Domain, 3rd Ed., § 8.6205, p. 58.

> "It can more easily be determined as to what are special benefits and general benefits if we inquire: What are the reasons for the rule that general benefits may not be deducted and special benefits may be deducted from consequential damages?

> "Why are general benefits not deducted? 'General benefits * * * may never be realized, and, if they are, it is unjust that one person should be obliged to pay for them by a contribution of property while his neighbor whose property is not taken enjoys the same advantages without price.'" 2 Lewis, Eminent Domain, 3rd Ed., 1198.

There is one other aspect of this case that justifies some comment. The project undertaken by the government had as its intended purpose, to provide flood control in the Missouri Valley Basin, and uses incident thereto. This is not a case where property adjoining a river increases in value because the stream is made navigable or where a highway is established near property to make it accessible to the outside, or streets are laid out to make property available to customers and trade. In those cases, the direct benefit to the adjoining property was intended. The object of the project in such cases was to enhance the value of the property for whose owners the project was developed. It is not so here. The purpose of this project was not to improve the "view" of the defendant's property. It was for flood control, navigation, and, incidentally, recreation and other uses. That all the land in the area of the Perry Reservoir has by reason of its establishment, substantially increased in value, is conceded. The kind of benefit, which is not allowed to be estimated for purpose of deduction from the award of just compensation, is that which comes from sharing the common advantage and convenience of increased public facilities, and the general advance in value of real estate in the vicinity by reason thereof. See United States v. River Rouge Improvement Co., 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339.

All tracts in the reservoir basin have a "view" of the lake. Some, by reason of the terrain and location, have a better view than others. But a special benefit is to be differentiated from general benefits where the difference is in kind and not in degree. See United States v. Alcorn, 80 F.2d 487 (9 CA). Even though the increase in value of the defendant's remaining property in this case may be greater than those of lower elevations, and at less advantageous locations for "view," the benefit was of the same kind. Why are special benefits deducted? The authorities clearly establish that one of the reasons is that

those benefits are a kind of benefit that has been brought to and affect the particular piece of land that is not shared in by all other land within the range of the public improvement and that the landowner should pay, by a reduction in his damages, for the special benefit. See Prudential Insurance Co. v. Central Nebraska Irrigation District, 139 Neb. 114, 296 N.W. 752, 145 A.L.R. 1, 7. Special benefits are those which are direct and peculiar to the particular property as distinguished from incidental benefits enjoyed to a greater or lesser extent by tracts in the area of the improvement. As was pointed out in United States v. 2,477.79 Acres of Land, 259 F.2d 23 (5 CA), general benefits are those which arise from the fulfillment of the public project which justified the taking (flood control in this case), and special benefits are those which arise from the peculiar relation of the land in question to the public improvement. Here, the remainder of defendant's tract has no relationship to the public improvement nor the purpose for which it was justified by Congress.

■ The Court must consider that the just compensation required to be paid for private property taken for public use means the full and perfect equivalent in money of the property taken; that the owner should be put in as good position pecuniarily as he would have occupied if it had not been taken. Citing United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336; United States v. 133.79 Acres of Land, 230 F.Supp. 973.

■ It follows that the award proposed by the Commission must be set aside and as authorized by Rule 53(3) II, the Court rejects the finding of the Commission determining the fair market value of the remainder of the tract taken in this case, and remands the matter back to the Commission with directions to determine the value of such remainder in conformity with the rules stated in this memorandum, and, thereafter, to prepare and file an amended report. The Commission is authorized to receive further evidence of the value of the remainder of the tract.

It is so ordered.