2025 UT App 58

# THE UTAH COURT OF APPEALS

UTAH DEPARTMENT OF TRANSPORTATION,
Appellee,
*v.*
BOGGESS-DRAPER COMPANY, LLC,
Appellant.

Opinion
No. 20220875-CA
Filed May 1, 2025

Third District Court, Salt Lake Department
The Honorable Barry G. Lawrence
No. 090921179

Robert E. Mansfield and Megan E. Garrett,
Attorneys for Appellant

Derek E. Brown, Stanford E. Purser, Barbara H.
Ochoa, and Andrew Kolter, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and JOHN D. LUTHY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     In 2009, the Utah Department of Transportation (UDOT) condemned a portion of a parcel of property owned by Boggess-Draper Company, LLC (Boggess) for a major project that included building a new freeway interchange and reconstructing a roadway. The parties were unable to reach an agreement on the amount of just compensation and severance damages that Boggess should receive for the condemnation, and the matter eventually proceeded to a jury trial to determine damages. After the trial, the jury awarded Boggess over $1.7 million, which included compensation for the value of the property taken as well

as severance damages. UDOT appealed, arguing the district court had improperly excluded evidence that Boggess eventually sold the remainder property and that the property had since been developed. The Utah Supreme Court agreed with UDOT and reversed the verdict and remanded the matter for a new trial. *See Utah Dep't of Transp. v. Boggess-Draper Co.*, 2020 UT 35, ¶¶ 1–2, 11, 467 P.3d 840.

¶2      Following a trial on remand, the jury awarded Boggess approximately $330,000 for the value of the condemned property, but it determined that Boggess was not entitled to severance damages on the remaining property. Boggess now appeals this verdict, asserting the district court abused its discretion when ruling on the admissibility of evidence relating to (1) the post-valuation sale and development of the remainder property, (2) the terms of an offer to purchase the property prior to the taking, (3) the benefits UDOT's project provided to the remainder property, and (4) the project's influence on the property's value. Although most of Boggess's arguments are not well taken, we agree with Boggess that the court's decision to admit evidence about the benefits the project conferred on the property was based on a misunderstanding of controlling law. Because the admission of this evidence was harmful to Boggess, we reverse the verdict and remand the matter for a new trial.


BACKGROUND

¶3      In 2009, Boggess owned an undeveloped parcel of property (the Property) at the southwest corner of 11400 South and Lone Peak Parkway in Draper, Utah. At the time, 11400 South was a two-lane road that did not connect to the I-15 freeway. Lone Peak Parkway was one of two commercial frontage roads that connected the closest neighboring interchanges on I-15 (10600 South and 12300 South). The area around the Property had

already been developed for commercial use and was occupied by a Walmart and two car dealerships.

¶4      UDOT sought to acquire a portion of the Property along 11400 South to construct a new I-15 interchange and widen and extend the existing roadway (the project). UDOT prepared an appraisal to assess the value of the proposed taking, but negotiations fell apart when the parties could not agree on the total value of the taking, which was to include both the value of the taken property and any severance damage to the remaining property. Thereafter, UDOT filed an eminent domain action to condemn the desired portion of the Property. As the litigation progressed, the parties stipulated that the valuation date for the Property was December 17, 2009.

¶5      The matter eventually proceeded to a jury trial that took place in 2018. *Utah Dep't of Transp. v. Boggess-Draper Co.*, 2020 UT 35, ¶ 5, 467 P.3d 840. Prior to trial, Boggess had filed a motion in limine asking the district court to exclude evidence that Boggess had sold the remainder of the Property in 2016 and that the land had since been developed into two car dealerships. *Id.* ¶¶ 5–6. The court had granted the motion based on a perceived "categorical rule prohibiting evidence of any sale or development of property after the date of its taking." *Id.* ¶ 13. At the close of trial, the jury awarded Boggess over $1.7 million, which included compensation for the value of the property taken as well as severance damages. *Id.* ¶ 9.

¶6      UDOT appealed, asserting, among other things, that the district court had erred in granting Boggess's motion in limine and categorically barring evidence of the post-valuation sale and development of the Property. *Id.* ¶ 11. The Utah Supreme Court agreed with UDOT. *Id.* ¶ 2. The court held "that a post-valuation-date sale or other development is *potentially relevant evidence*, and not subject to a categorical bar under the code," *id.* ¶ 23, and that the admissibility of such evidence is governed by the Utah Rules

of Evidence, including rule 403, *id.* ¶¶ 18, 25. The court determined that "[a] post-valuation-date sale or development of property may be relevant to the extent it aids the factfinder in checking assumptions about the development potential of the property in question," *id.* ¶ 20, but it also recognized that "such developments may not be conclusive, as where market conditions have changed markedly from those expected at the time of the taking," *id.* ¶ 24. The court noted, however, that "[c]oncerns about unexpected changes in market conditions can be raised and tested in the crucible of the adversary system—through dueling experts and otherwise," *id.* ¶ 25—because these concerns go "to the weight of the evidence *and not its competency or its relevance*," *id.* ¶ 27 (quotation simplified).

¶7      After determining the district court had erred in excluding the post-valuation sale and development evidence, the supreme court then concluded that the error constituted reversible error. *Id.* ¶ 31. It reasoned that the exclusion of the evidence had "hamstrung" UDOT in presenting any evidence to rebut Boggess's claim for severance damages, which was "premised on the idea that UDOT's taking diminished access to the remaining property and increased commuter traffic." *Id.* ¶¶ 32–33. The court accordingly reversed the verdict and remanded the matter for a new trial. *Id.* ¶ 2.

¶8      Following a multi-day trial on remand, the jury awarded Boggess approximately $330,000 for the value of the condemned property, but it determined that Boggess was not entitled to severance damages. Boggess contends this verdict—which represents a roughly $1.4 million reduction from the first verdict—is attributable to four improper evidentiary rulings rendered by the district court. We briefly summarize each of the court's challenged rulings.

¶9      **Evidence of the post-valuation sale and development of the Property.** Boggess filed a pretrial motion in limine seeking to

again exclude evidence of the 2016 sale and development of the Property. Boggess argued that this evidence was improper under rule 403 of the Utah Rules of Evidence because any probative value was substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. The district court granted the motion in part, concluding that the sales price of the Property should be excluded, but it denied the motion insofar as it concerned evidence of the fact of the sale and subsequent development of the remainder parcel (the post-valuation evidence), concluding that such evidence was admissible.

¶10     **Evidence of general benefits to the Property.** Boggess filed a second motion in limine to limit UDOT's expert's (Expert) reports and expected testimony regarding the following three benefits to the Property conferred by the project: (1) direct access from I-15 bringing more traffic into the area; (2) an increase from one to three lanes traveling for right-in/right-out traffic; and (3) curb, gutter, and sidewalk improvements. Relying on *Hempstead v. Salt Lake City*, 90 P. 397 (Utah 1907), Boggess argued that Expert's testimony about these benefits should be excluded because these benefits are "general benefits," rather than "special benefits," and general benefits cannot be used to offset severance damages. The district court denied this motion in its entirety. The court reasoned that all three benefits identified by Boggess are special benefits under *Hempstead* and that Expert was therefore not prohibited from testifying about how these benefits had increased the Property's value.

¶11     **Evidence of a 2008 offer to purchase the Property.** During the rebuttal examination of Mr. Boggess (one of the principals of Boggess), counsel for Boggess attempted to introduce evidence about the terms of an offer to purchase the Property that was received in 2008 (the 2008 offer). Because Mr. Boggess had not been able to recall that information during his earlier cross-examination, UDOT objected. Following a sidebar discussion, the

district court sustained the objection. Mr. Boggess was not permitted to provide any testimony regarding the terms of the 2008 offer.

¶12 **Evidence of project influence.** Prior to trial, Boggess submitted to the district court written objections to UDOT's proposed jury instructions. Among other things, Boggess took issue with UDOT's "Project Influence" instruction, while also requesting that the court not send the issue of project influence to the jury and that the court exclude all "evidence regarding project influence" from trial. The court did not rule on Boggess's request, however, and Boggess did not object to any testimony at trial on the ground that it implicated the project's purported influence on the Property's value.

ISSUES AND STANDARDS OF REVIEW

¶13 Boggess now appeals, raising four issues for our review. First, Boggess argues the district court abused its discretion by admitting the post-valuation evidence. "We review a trial court's decision to admit or exclude evidence under rule 403 using an abuse of discretion standard." *Wakefield v. Gutzman*, 2024 UT App 76, ¶ 37, 552 P.3d 206 (quotation simplified), *cert. denied*, 558 P.3d 85 (Utah 2024).

¶14 Second, Boggess argues the district court abused its discretion by excluding evidence of the terms of the 2008 offer. "We review the trial court's determinations regarding the admissibility of evidence under an abuse of discretion standard." *Anderson v. Thompson*, 2008 UT App 3, ¶ 25, 176 P.3d 464.

¶15 Third, Boggess argues the district court erred in allowing Expert to testify regarding benefits to the Property. "We review for correctness any legal questions underlying the admissibility of evidence, but we review for abuse of discretion any decisions to

admit or exclude evidence and determinations regarding the admissibility of expert testimony." *Metropolitan Water Dist. v. Sorf*, 2023 UT App 146, ¶ 28, 542 P.3d 87 (quotation simplified), *cert. denied*, 550 P.3d 992 (Utah 2024).

¶16   Fourth, Boggess argues the district court abused its discretion by allowing testimony regarding project influence. To the extent this issue was preserved, we review the court's decision for an abuse of discretion. *See Anderson*, 2008 UT App 3, ¶ 25.

ANALYSIS

I. The Post-valuation Evidence

¶17   Boggess argues the district court abused its discretion by admitting the post-valuation evidence of the 2016 sale and development of the Property. According to Boggess, the court should have excluded the post-valuation evidence under rule 403 of the Utah Rules of Evidence because its probative value is substantially outweighed by other factors.

¶18   Under rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Utah R. Evid. 403. "When engaging in this balancing test, the court indulges a presumption in favor of admissibility." *Wakefield v. Gutzman*, 2024 UT App 76, ¶ 44, 552 P.3d 206 (quotation simplified), *cert. denied*, 558 P.3d 85 (Utah 2024). To that end, the court "must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Woods v. Zeluff*, 2007 UT App 84, ¶ 8, 158 P.3d 552 (quotation simplified). The court "is granted broad discretion when weighing the probative value of evidence against the reasons for exclusion enumerated in rule 403," *Glacier Land Co. v. Claudia Klawe & Assocs., LLC*, 2006 UT App 516, ¶ 24,

154 P.3d 852, *cert. denied*, 168 P.3d 819 (Utah 2007), and we will not disturb a court's decision to admit evidence under this rule unless the decision is "against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice or resulted from bias, prejudice, or malice," *Northgate Village Dev., LC v. City of Orem*, 2019 UT 59, ¶ 27, 450 P.3d 1117 (quotation simplified).

¶19 In its first motion in limine, Boggess moved the district court to exclude the post-valuation evidence based on its lack of probative value. In particular, Boggess argued the post-valuation evidence had little, if any, probative value because the "2016 sale [and development] occurred several years after the valuation date [and] in very different market conditions." Relying on the rationale of the supreme court in the prior appeal and on rule 403, the court denied Boggess's motion, concluding that "the probative value of such evidence [was] not substantially outweighed by the danger of unfair prejudice." The court reasoned that the post-valuation evidence was "relevan[t] as a check on earlier assumptions" and that Boggess would have the opportunity to address its concerns about changed market conditions at trial in "the crucible of the adversary system— through dueling experts and otherwise," (quoting *Utah Dep't of Transp. v. Boggess-Draper Co.*, 2020 UT 35, ¶ 25, 467 P.3d 840).

¶20 Boggess argues the district court abused its discretion in so ruling, because the post-valuation evidence "lacks probative value, creates unfair prejudice, and misleads [and confuses] the jury." Boggess's arguments are unavailing.

¶21 First, the post-valuation evidence has probative value. "The probative value of evidence is judged by the strength of the evidence and its ability to make the existence of a consequential fact either more or less probable and the proponent's need for the evidence." *Anderson-Wallace v. Rusk*, 2021 UT App 10, ¶ 19, 482 P.3d 822 (quotation simplified), *cert. denied*, 496 P.3d 716 (Utah

2021). Here, the fundamental question presented to the jury was the amount of just compensation owed to Boggess for the taking. This amount was to include the fair market value of the taken property and any resulting severance damages to the remaining property. As was the case in the first trial, Boggess's theory of severance damages was that the taking had diminished access to the Property and increased traffic, thereby harming the Property's potential future development. The post-valuation evidence was probative as to this issue because it allowed UDOT to rebut Boggess's theory by "undermin[ing] [Boggess's] expressed concerns about a lack of access to the [P]roperty or other barriers to development." *Boggess-Draper Co.*, 2020 UT 35, ¶ 21. And given that UDOT would have again been "hamstrung" in defending against this claim without the post-valuation evidence, *id.* ¶ 33, UDOT's need for the evidence was high.

¶22    Boggess pushes back on this conclusion, arguing that even if the post-valuation evidence has some probative value, such value is greatly diminished because of the "nearly seven year[]" time lapse between the 2009 valuation date and the 2016 sale and the "vastly different economic conditions" that existed as of each date. While Boggess's underlying concern is not entirely without merit, Boggess has not grappled with the fact that this very issue was addressed by our supreme court in the first appeal. There, the court made clear that "transactions removed in time from the valuation date may be probative of the market value on that date." *Id.* ¶ 27. The court went on to explain that "the more remote the time of the sale the less probative value it may have," but that this consideration "goes to the weight of the evidence *and not its competency or its relevance.*" *Id.* (quotation simplified). The district court was well within its discretion to follow our supreme court's guidance and conclude that the changed market concerns did not wholly eliminate the probative value of the post-valuation evidence, and that the concerns cited by Boggess should be

reserved for trial where they could be "raised and tested in the crucible of the adversary system." *Id.* ¶ 25.

¶23 Second, the probative value of the post-valuation evidence is not substantially outweighed by a danger of unfair prejudice. "Rule 403 does not guard against the danger of prejudice—it guards against the danger of *unfair* prejudice." *State v. McCullar*, 2014 UT App 215, ¶ 48, 335 P.3d 900 (emphasis added), *cert. denied*, 343 P.3d 708 (Utah 2015). Evidence is unfairly prejudicial only if it "creates an undue tendency to suggest decision on an improper basis." *Anderson-Wallace*, 2021 UT App 10, ¶ 23 (quotation simplified). Boggess asserts the post-valuation evidence satisfies this standard because UDOT "used the existence of the sale and development of the Property to convince the jury" that the 2009 market value should be based on events that occurred in 2016.[1] This argument is unavailing for multiple reasons. As an initial matter, UDOT did not use the post-valuation evidence in the way Boggess alleges. As discussed, the post-valuation evidence was introduced to rebut Boggess's claim that the taking had undermined the Property's potential for future development; it was *not* used to establish the specific dollar value of the Property on the valuation date. So viewed, it was reasonable for the court to conclude that the post-valuation evidence was not unfairly prejudicial because it merely provided context to the jury regarding Boggess's claim.

¶24 Moreover, though the post-valuation evidence was undoubtably detrimental to Boggess, there is nothing to indicate that any unfairly prejudicial aspect of the evidence rises to a level that would warrant exclusion. *See* Utah R. Evid. 403 (stating that evidence may be excluded when the "probative value is

---

1. In a related vein, Boggess complains it was unfairly prejudiced by photographs introduced by UDOT showing the Property after it had been "substantially developed." This argument fails for the same reasons as Boggess's general unfair prejudice argument.

*substantially* outweighed by a danger of . . . unfair prejudice" (emphasis added)). "Where evidence is undeniably probative of the central issue in a case, the danger of *unfair* prejudice *substantially* outweighing the probative value of the evidence is low." *Anderson-Wallace*, 2021 UT App 10, ¶ 24. Admission of the post-valuation evidence was critical to UDOT's defense against Boggess's theory of damages, and the evidence is not of such a type as could "cause the jury to base its decision on something other than the established propositions of the case," *id.* ¶ 23 (quotation simplified).

¶25 Third, the probative value of the post-valuation evidence is not substantially outweighed by a danger of misleading the jury or confusing the issues. After reviewing Boggess's motion in limine, the district court determined that evidence of the 2016 sales price would mislead the jury by "anchor[ing]" the jury to that number as the amount of "intrinsically just compensation." And the court found that, even more importantly, admission of the 2016 sales price would likely cause confusion by spurring "a trial within a trial in which both sides vigorously debate an issue that is largely irrelevant to the main question the jury must decide." But the court did not share the same level of concern regarding the other aspects of the post-valuation evidence. The court was comfortable that Boggess would be able to "adequately address all of its concerns" related to the time lapse and the changed market conditions through expert testimony at trial. *See Boggess-Draper Co.*, 2020 UT 35, ¶ 25. Given the court's broad discretion to make this type of evidentiary ruling, we cannot say that this determination was an abuse of discretion. *See Northgate Village*, 2019 UT 59, ¶ 27.

¶26 For the foregoing reasons, the district court did not abuse its discretion in admitting the post-valuation evidence.

II. Evidence of the Terms of the 2008 Offer

¶27 Boggess next argues the district court abused its discretion by excluding testimony from Mr. Boggess regarding the specific terms of the 2008 offer to purchase the Property. Boggess asserts that this evidence was "relevant to the value of the property," *see generally* Utah R. Evid. 401, and that the court therefore abused its discretion when it "refused to hear the testimony and provided no grounds for its decision to exclude such testimony." For its part, UDOT does not contest the relevance of the 2008 offer and instead challenges Boggess's framing of the argument. Specifically, UDOT contends the court properly excluded the challenged evidence because Boggess attempted to introduce it during Mr. Boggess's rebuttal testimony and it was not proper rebuttal evidence.

¶28 To begin, we disagree with Boggess's assertion that the district court sustained the objection to Mr. Boggess's testimony about the terms of the 2008 offer "with no justification." On the first day of trial, UDOT cross-examined Mr. Boggess about his attempts to market and sell the Property prior to the valuation date. Mr. Boggess testified that in 2008 he had received an offer on the Property from a developer. When pressed on the specifics of the offer—namely, "how much" the offer was for—Mr. Boggess responded, "I don't remember off hand." Then, on the fourth day of trial, Mr. Boggess was called back to the stand for rebuttal examination. Boggess's counsel asked Mr. Boggess about the 2008 offer, and the following exchange took place:

> [Boggess's counsel]: When was that offer?
>
> [Mr. Boggess]: It was in 2008.
>
> [Boggess's counsel]: What was that offer for?

> [UDOT's counsel]: Objection, your Honor, can we approach[?]
>
> . . . .
>
> (Discussion at the bench)
>
> . . . .
>
> [Boggess's counsel]: Your prior ruling was that if we could lay foundation that the offer was made in 2007 or 2008 that the price was fair game, and he just said that this offer was made in 2008, so I believe that the price is fair game. . . .
>
> [The Court]: What are you saying—what are you saying (inaudible) exactly?
>
> [UDOT's counsel]: He couldn't remember.
>
> [The Court]: Yeah, we're not doing that. We're not doing that. Go ahead.

Viewed in context, this exchange clearly illustrates that the court's decision to exclude Mr. Boggess's testimony about the amount of the 2008 offer was based on the fact that Boggess was attempting to introduce evidence for the first time during its rebuttal case—evidence that Mr. Boggess had been unable to recall during his earlier cross-examination. In other words, the court's decision to prevent that testimony from coming in was not based on an unarticulated determination that the content of Mr. Boggess's testimony was not relevant; rather, it was based on the timing and procedural posture in which the evidence was introduced.

¶29     Having identified the basis for the district court's decision, we next examine whether the excluded testimony "was proper rebuttal" evidence. *Astill v. Clark*, 956 P.2d 1081, 1086 (Utah Ct.

App. 1998). "Rebuttal evidence is evidence tending to refute, modify, explain, or otherwise minimize or nullify the effect of the opponent's evidence." *Randle v. Allen*, 862 P.2d 1329, 1338 (Utah 1993). "The purpose of rebuttal evidence is not to merely contradict or corroborate evidence already presented, but to respond to new points or evidence first introduced by the opposing party." *Astill*, 956 P.2d at 1086. Thus, "[r]ebuttal evidence should be limited to evidence made necessary by the opponent's case-in-reply and evidence required to counter new facts presented in the defendant's case-in-chief." *Id.* (citation omitted).

¶30   Mr. Boggess's excluded rebuttal testimony does not satisfy this standard. Mr. Boggess's testimony about the terms of the 2008 offer was not offered to rebut evidence presented by UDOT. Rather, the testimony was merely an attempt to allow Boggess to remedy the shortcoming of the testimony offered during its case-in-chief by presenting *new* evidence that was potentially favorable to Boggess's case. We therefore conclude the court did not abuse its discretion in excluding the testimony as improper rebuttal evidence.[2]

---

2. In reaching this conclusion, we are not rendering judgment as to whether the district court would have exceeded its discretion had Boggess tried to introduce the terms of the 2008 offer during its case-in-chief. In other words, our decision does not hinge on whether the evidence is otherwise admissible under our rules of evidence. And given that the court allowed the jury to hear the terms of the 2008 offer in the first trial, it is likely that Boggess would have been successful in its attempt to introduce the evidence had the attempt been made during a procedurally appropriate time.

III. Evidence Regarding Benefits to the Property

¶31 Boggess argues the district court should have excluded evidence from Expert regarding general benefits to the Property arising from the project because evidence of general benefits cannot be considered when determining severance damages. Relying on *Hempstead v. Salt Lake City*, 90 P. 397 (Utah 1907), Boggess contends the court erred in classifying three general benefits as special benefits when denying Boggess's motion in limine: (1) the direct access from I-15 bringing more traffic into the area; (2) the increase from one to three lanes traveling for right-in/right-out traffic; and (3) the curb, gutter, and sidewalk improvements. We begin by discussing Utah law as it relates to general and special benefits. We then examine whether the court erred in classifying these particular benefits at issue as special benefits.

¶32 In *Hempstead*, the Utah Supreme Court first recognized the rule that some benefits arising from a taking may be so general that they cannot be fairly used to offset damages caused by that taking. *See id.* at 401. There, the plaintiff filed a claim against Salt Lake City for damages to his property caused by improvements to the street fronting his property. *Id.* at 398. The jury was instructed to award the plaintiff damages for "the difference between the market value of the property . . . as it was immediately before and after the improvement." *Id.* at 400. In arriving at the after-improvement amount, the jury was told "to exclude any general benefits derived from the improvement which were common to the general public," but to include any "special 'or peculiar' benefits." *Id.*

¶33 On appeal the city complained the district court had not properly informed the jury what benefits could be considered in awarding the plaintiff damages. *Id.* In particular, the city asserted the jury should have been instructed to consider whether the street improvements had "increas[ed] the travel" on the street

adjacent to the property or had "establish[ed] or enabl[ed] improvements in the vicinity" of the property. *Id.* The supreme court disagreed. First, the court affirmed that general benefits may not be used to offset damages to a landowner. *See id.* The court held that "the benefits which may be taken into consideration for the purpose of reducing the damages to be awarded to the landowner are such as are direct and special as to him and his land," and that such benefits must be "something which *affects the land itself* directly and proximately." *Id.* (emphasis added) (quotation simplified). The court further explained that a special benefit must "increase[] the actual or usable value of the land" and not "increase[] merely the market or salable value alone." *Id.* (quotation simplified). In contrast, general benefits are those which "aris[e] incidentally out of the improvement and [are] enjoyed by the public generally."[3] *Id.* at 401. Because general benefits are "speculative and remote," they are "too uncertain to be the subject of legal offset." *Id.*

¶34 Based on the foregoing principles, the supreme court concluded that the district court had properly refused to instruct the jury as requested by the city since the instruction "was not confined to special benefits accruing to the particular property in question." *Id.* The court reasoned that "[i]ncreased value founded upon merely increased facilities for travel and transportation by the public in general is not the kind of increased value which may

---

3. The supreme court acknowledged that in some instances, "benefits may be special which are in a sense likewise general," citing as an example a case where an "improvement made a large share or all of the property *abutting thereon* more accessible and convenient for use." *Hempstead v. Salt Lake City*, 90 P. 397, 401 (Utah 1907) (emphasis added). But the court made clear that in such a case, special benefits would not "cease to be special simply because they were enjoyed by several or a large number of property owners in common." *Id.*

be taken into consideration in reducing the damages to be awarded to the landowner." *Id.* at 400 (quotation simplified). Moreover, this type of increased value "is common to the whole community in general" and "*it has no relation to the use of the land as land*, but it is merely an increased market value founded upon the extraneous circumstances of increased facilities for public travel and transportation." *Id.* at 401 (emphasis added) (quotation simplified).

¶35 In sum, only special benefits may be used to offset severance damages. A special benefit is one that makes a direct, physical difference to the use of the particular parcel of land. In other words, the landowner of the property that is taken should not be deprived of a benefit conferred on landowners generally through the installation of a public development by having the value of that general benefit deducted from its award of severance damages. Further, there is no bright-line rule dictating that an improvement qualifies as a general benefit—rather than a special benefit—based merely upon the number of properties that are benefitted. Instead, the inquiry is whether the improvement made the actual parcel of land, or any part "abutting thereon," "more accessible or convenient for use." *Id.*

¶36 With this legal background in mind, we next analyze the district court's determination that the benefits identified in Boggess's motion in limine—namely, direct interstate access increasing traffic; increased lanes of travel; and the curb, gutter, and sidewalk improvements—are special benefits.[4]

---

4. UDOT contends that "Utah law has abandoned the special/general benefits distinction" and, therefore, that any error in classifying the benefits does not warrant reversal. In support of this argument, UDOT notes that the statute governing compensation in partial takings cases does not distinguish

(continued…)

¶37 First, direct interstate access increasing traffic is a general benefit. In reaching the opposite conclusion, the district court adopted a position directly at odds with our supreme court's decision in *Hempstead*, wherein the court held that a special benefit must be "something which *affects the land itself* directly and proximately." *Id.* at 400 (emphasis added) (quotation simplified). And, applying that reasoning, the supreme court specifically determined that "merely increased facilities for travel and transportation by the public in general" do not qualify as a special benefit because any increase in value from such improvements "has no relation to the use of the land as land." *Id.* at 400–01 (quotation simplified). So too here. Any increase in value derived from direct interstate access increasing traffic is founded upon something that "increases merely the market or salable value" without "affect[ing] the [Boggess] land itself directly." *Id.* at 400 (quotation simplified).

¶38 Second, the increase from one to three lanes is a general benefit. The district court's analysis of this benefit was largely the same as its analysis regarding direct interstate access increasing traffic. Thus, the court's ruling on this point is likewise infirm for the reasons identified above. That is, "merely increased facilities for travel and transportation by the public in general" do not

---

between "special" and "general" benefits when explaining how to calculate just compensation. *See* Utah Code § 78B-6-511(1)(a), (b), (d). Although UDOT is correct, it does not follow that the lack of such distinctions in the statute constitutes an abandonment of *Hempstead*. For this same reason, UDOT's contention that our supreme court's failure to discuss "special" and "general" benefits in a recent case where the court interpreted Utah Code section 78B-6-511 amounted to the court "eliminat[ing] the special versus general benefits distinction" is unavailing. *See Utah Dep't of Transp. v. Admiral Beverage Corp.*, 2011 UT 62, ¶¶ 31–33, 275 P.3d 208.

qualify as a special benefit because any increased value resulting from such improvements is not "founded upon something which affects the land itself directly and proximately." *Id.* (quotation simplified).

¶39    Third, the curb, gutter, and sidewalk improvements are a special benefit. Unlike the first two benefits, the curb, gutter, and sidewalk improvements "increase[d] the actual or usable value of the land, *as well as* the market or salable value thereof." *Id.* (emphasis added) (quotation simplified). The improvements "affect[ed] the land itself directly and proximately" by making "a large share or all of the property *abutting thereon* more accessible and convenient for use." *Id.* at 400–01 (emphasis added) (quotation simplified). The district court therefore correctly determined that the curb, gutter, and sidewalk improvements are a special benefit.[5]

---

5. Boggess contends the curb, gutter, and sidewalk improvements are a general benefit because "this infrastructure already existed on portions of the Property prior to the" project, and "benefits that are of the same kind but vary in degree do not constitute special benefits." This argument is unavailing because Boggess misreads the case upon which it relies for support.

In *United States v. 930.65 Acres of Land in Jefferson County*, 299 F. Supp. 673 (D. Kan. 1968), an area of land was taken to create a reservoir. *Id.* at 675–76. In analyzing the amount of compensation owed, the court had to consider whether an increase in the property's value caused by a view of the reservoir was a special or general benefit. *Id.* at 678. The court recognized that although all tracts of land in the area had a view of the new reservoir, some of the tracts had "a better view than others." *Id.* Despite these differences "in degree" of the benefit conferred, the court concluded that the view was a general benefit because it "was of the same kind" for all the properties. *Id.* Thus, contrary to

(continued…)

¶40    Having determined the district court incorrectly classified the direct interstate access increasing traffic and the increased travel lanes as special benefits, we next consider whether the court's error was harmful. An error is harmful if, "absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Powell*, 2007 UT 9, ¶ 21, 154 P.3d 788 (quotation simplified).

¶41    Here, we have no trouble concluding that Boggess was harmed by the district court's error. By classifying all the benefits as special as a matter of law, the court allowed evidence that was legally incorrect and crippling to Boggess's ability to recover severance damages. Expert testified that the project had "significantly" benefitted the Property because the price per square foot of the Property in the "before condition" ($8.75) was less than the price per square foot in the "after condition" ($12.50). He attributed the nearly four dollar per square foot increase to "the advantage of the interchange, and the traffic exposure," and concluded that the difference between these figures demonstrated that the Property had received "a special benefit of 2.2 million dollars" from the project. By defining the interstate access increasing traffic as a special benefit, Expert improperly inflated

---

Boggess's assertion, the court's distinction between general and special benefits did not turn on whether the benefit improved something that existed on the property prior to the taking. Rather, the relevant inquiry was whether the improvement benefited the property in a kind of way different from that in which it benefitted other properties. *See id.* ("[A] special benefit is to be differentiated from general benefits where the difference is in kind and not in degree."). Boggess's suggestion to classify the increased infrastructure as a general benefit because the same type of infrastructure already existed in some degree on parts of the Property prior to the project is unpersuasive.

the Property's after-condition valuation, which created a sizeable $2.2 million offset. Without the inclusion of the general benefits, the offset would have been significantly lower, thereby creating a reasonable likelihood that Boggess would have been awarded severance damages. This error is accordingly reversible. *See State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992).

## IV. Evidence of Project Influence

¶42    Boggess argues the district court abused its discretion by allowing UDOT to introduce evidence regarding the project's influence on the Property's pre-project value because such evidence violated the project-influence rule. *See Utah Dep't of Transp. v. LEJ Invs. LLC*, 2018 UT App 213, ¶ 10, 437 P.3d 569 (stating that the project-influence rule requires "any enhancement or decrease in value attributable to the purpose for which the property is being condemned [to] be excluded in determining the fair market value of the property" (quotation simplified)); *accord Redevelopment Agency of Salt Lake City v. Grutter*, 734 P.2d 434, 437 (Utah 1986). UDOT contends that we need not reach the merits of this issue, however, because Boggess failed to preserve it for our review. We agree with UDOT.

¶43    "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *State v. Rogers*, 2020 UT App 78, ¶ 20, 467 P.3d 880 (quotation simplified), *cert. denied*, 470 P.3d 445 (Utah 2020). To afford the district court this opportunity, "a party asserting error on appeal must have raised the issue before the district court specifically, in a timely manner, and with support by evidence and relevant legal authority." *Knowles v. Knowles*, 2022 UT App 47, ¶ 27, 509 P.3d 265 (quotation simplified), *cert. denied*, 525 P.3d 1258 (Utah 2022). Raising an issue in this manner "puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801.

¶44    In January 2022, nearly eight months before the start of trial, Boggess submitted to the district court written objections to UDOT's proposed jury instructions. These objections included an objection to UDOT's "Project Influence" instruction that raised substantively the same issue as the project-influence issue Boggess now raises on appeal, and also asked the court to not send the issue of project influence to the jury and to exclude all "evidence regarding project influence" from trial. Boggess contends this objection was sufficient to satisfy its preservation duty because it "included substantial evidence and legal authority on the project influence issue," and the court "had ample time to rule on the issue" before trial.[6]

¶45    But even crediting Boggess's position on the content and timing of the objection, this is not sufficient to discharge Boggess's preservation duty to "timely" raise the issue to "a level of consciousness such that the trial judge can consider it." *In re Baby Girl T.*, 2012 UT 78, ¶ 34, 298 P.3d 1251 (quotation simplified). Because Boggess's requests to exclude evidence of project influence—which for all practical purposes amounted to a motion in limine—were labeled as a mere objection to a jury instruction, the court had no reason to review the specific objection until the end of trial when all the instructions had to be finalized. And at that point, it was too late for the court to exclude the challenged evidence given that it had already been presented during trial. Moreover, Boggess made no effort to lodge a real-time objection

---

6. In its opening brief, Boggess provides two additional citations to the record where it claims the issue of project influence was preserved. But neither of those citations support Boggess's position because they do not address project influence in any manner. The first citation is to a hearsay objection Boggess lodged during a witness's trial testimony. And the second citation is to Boggess's motion in limine seeking to exclude evidence from Expert about general benefits.

to any project influence testimony during trial on the grounds it now raises on appeal despite knowing the court had not ruled on Boggess's earlier jury instruction objections. Given that the court was clearly not aware of the issue during trial and therefore did not have the opportunity to rule on it, we conclude that Boggess has not preserved the issue and cannot now ask us to review it on appeal.

## CONCLUSION

¶46 The district court's rulings allowing the post-valuation evidence and excluding the terms of the 2008 offer were within the bounds of its discretion, and we therefore affirm them. And because Boggess failed to preserve the issue of project influence, we will not consider its argument regarding the admissibility of such evidence.

¶47 However, the district court misinterpreted the law regarding special and general benefits. As a result, the court erred when it denied Boggess's motion in limine and allowed evidence regarding general benefits. Because this error was harmful to Boggess, we reverse the verdict and remand the matter to the district court for a new trial.